Steven J. Luckner
Jennifer Rygiel-Boyd
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Telephone: (973) 656-1600
Facsimile: (973) 656-1611
*Attorneys for Defendant Liberty Mutual*
*Insurance Company*

-----------------------------------------------
                                        :       Hon. Madeline Cox Arelo, U.S.D.J.
LATOYA THOMPSON,                        :       Case No.: 2:18-cv-06092-MCA-JAD
                                        :
                    Plaintiff,          :       **DEFENDANT'S REBUTTAL**
v.                                      :       **STATEMENT OF UNDISPUTED**
                                        :       **MATERIAL FACTS IN FURTHER**
LIBERTY MUTUAL INSURANCE,               :       **SUPPORT OF SUMMARY JUDGMENT**
                                        :       **AND RESPONSE TO PLAINTIFF'S**
                    Defendant.          :       **SUPPLEMENTAL STATEMENT OF**
                                        :       **DISPUTED MATERIAL FACTS**
                                        :
-----------------------------------------------  :

Defendant Liberty Mutual Insurance Company ("Liberty Mutual" or "the Company")

hereby submits the following Rebuttal Statement of Undisputed Material Facts submitted in further

in support of its Motion for Summary Judgment, and its Response to Plaintiff's Supplemental

Statement of Disputed Material Facts.

2.      Plaintiff Latoya Thompson ("Plaintiff") worked at Liberty Mutual's Roseland

office from April 7, 2008 through her termination on July 28, 2016. (Pl. Dep. Tr., 46:11-18;

(Rygiel-Boyd Cert., Exh. 1.)

**Plaintiff's Response:** Agree as to Plaintiff's date of hire. Disagree as to termination date, as set

forth in Nos. 83-86 below. Note that Plaintiff had begun her disability/medical leave for pregnancy

prior to being informed, on or about 9 August 2016, that her employment was terminated.

**Liberty Mutual's Rebuttal:** Contrary to Plaintiff's assertion, Plaintiff does not dispute her termination date in response to Fact Nos. 83-86 below or submit any evidence that Liberty Mutual did not terminate her employment effective July 28, 2016. Rather, in those responses, Plaintiff admits that she did not receive the termination letter until a week after FedEx delivered it and then waited another couple months before she opened it.

4.      Liberty Mutual's Equal Employment Opportunity policy ("EEO Policy") provides that the Company will not tolerate discrimination on the basis of any protected characteristic, including pregnancy. (Rygiel-Boyd Cert., Exh. 2).

**Plaintiff's Response:** Agree. That is what the EEO Policy states. Plaintiff testified "Yes. Per the document." (Thompson, P64, L20). Plaintiff avers generally that it was not followed.

**Liberty Mutual's Rebuttal:** Plaintiff attempts to create an issue of material fact by disputing that Liberty Mutual followed its EEO policy, she failed to cite evidence and, thus, failed to properly show that this fact is in dispute. *See* Local Civ. Rule 56.1 ("The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and ***citing to the affidavits and other documents submitted in connection with the motion.***") (emphasis added); *see also V.C. v. Target Corp.*, 2020 WL 1864611, *1 n. 4 (D.N.J. April 14, 2020) (In granting summary judgment, the Court disregarded statements made by plaintiff's counsel in opposition without citing to the record to support them). Accordingly, Liberty Mutual respectfully requests that the Court strike and disregard Plaintiff's alleged dispute.

5.      Plaintiff understood that Liberty Mutual expressed a commitment to providing equal employment opportunity to all, including the fact that it would not tolerate discrimination on the basis of any characteristic prohibited by federal, state or local law, including based on race, disability, pregnancy, or any other protected category. (Pl. Dep. Tr., 63:22-64:20).

**Plaintiff's Response:** Agree. That is what the EEO Policy states. Plaintiff testified "Yes. Per the document." (Thompson, P64, L20). Plaintiff avers generally that it was not followed.

**Liberty Mutual's Rebuttal:** Plaintiff attempts to create an issue of material fact by disputing that Liberty Mutual followed its EEO policy, she failed to cite evidence and, thus, failed to properly show that this fact is in dispute. *See* Local Civ. Rule 56.1; *see also V.C., supra.* Accordingly, Liberty Mutual respectfully requests that the Court strike and disregard Plaintiff's alleged dispute.


12.      Edie McGinn, Plaintiff's direct supervisor, completed and provided Plaintiff with her Objective Setting and Performance Evaluation Form for 2013. (Pl. Dep. Tr.,160:5-161:3; McGinn Dep. Tr., 45:22-48:10; 50:24-51:24; Rygiel-Boyd Cert., Exh. 3.)

**Plaintiff's Response:** Agree it was completed. Disagree it was provided to Plaintiff as she was out on a disability/medical leave of absence (Thompson, P160, L23-24).

**Liberty Mutual's Rebuttal:** In an attempt to create an issue of fact, Plaintiff completely ignores that, during her deposition, she admitted to receiving this performance evaluation when she returned to work after her leave. (Pl. Dep. Tr., 161:18-20.)


18.      As Squeo noted in his July 24, 2014 e-mail, 136 of the 232 claims assigned to Plaintiff had not been touched in three months; "some of the new assignments were not reviewed

within the 14 day requirement;" 20 cases had to be reassigned to another Technical Claims Specialist; and mail was founded on her desk untouched. (Rygiel-Boyd Cert., Exh. 5.)

**Plaintiff's Response:** Agree that that is what the email referenced. Disagree that being behind on her work should have been held against her because she had been out on a disability/medical leave at that time (Thompson, P177, L12-18; P179, L5-L15; P190, L15 - P191, L18).

**Liberty Mutual's Rebuttal:** Plaintiff's disagreement with Liberty Mutual's reasons for its decisions relating to her employment is improper. It is axiomatic that Plaintiff cannot substitute her own judgment (or the Court's judgment) for Liberty Mutual's business judgment in making this decision. *See Ezold v. Wolf, Block, Schorr & Solis-Choen*, 983 F.2d 509, 525-27 (3d Cir. 1992). Moreover, Plaintiff's personal opinion is insufficient to create an issue of fact to defeat summary judgment. *See Wetheimer v. Singer*, 2009 WL 197515, *1 (D.N.J. January 26, 2009) ("Conclusory statements, general denials, and factual allegations not based on personal knowledge are insufficient to avoid summary judgment.")

19.     With the approval of Squeo and HR, Holt issued a Written Warning to Plaintiff on August 13, 2014 ("First Warning"). (Pl. Dep. Tr., 264:18-265:16; Holt Dep. Tr., 87:7-14; Squeo Dep. Tr., 33:15-35:12; Rygiel-Boyd Cert., 6.)

**Plaintiff's Response:** Agree that Holt issued a Written Warning. Disagree it was justified, as Plaintiff testified her case work backed up because she was on a disability/medical leave (Thompson, P266, L5-23).

**Liberty Mutual's Rebuttal:** Plaintiff's disagreement with Liberty Mutual's reasons for its decisions relating to her employment is improper. It is axiomatic that Plaintiff cannot substitute her own judgment (or the Court's judgment) for Liberty Mutual's business judgment in making

this decision. *See Ezold, supra.* Moreover, Plaintiff's personal opinion is insufficient to create an issue of fact to defeat summary judgment. *See Wetheimer, supra.*

20.     Prior to issuing the First Warning, Holt met with Plaintiff on June 11, 2014 and June 24, 2014 to discuss these performance issues. (Pl. Dep. Tr., 266:5-267:6.)

**Plaintiff's Response:** Agree that Holt and Plaintiff met to discuss alleged performance issues. Disagree it was justified, as Plaintiff testified her case work backed up because she was on a disability/medical leave (Thompson, P266, L5-23).

**Liberty Mutual's Rebuttal:** Plaintiff's disagreement with Liberty Mutual's reasons for its decisions relating to her employment is improper. It is axiomatic that Plaintiff cannot substitute her own judgment (or the Court's judgment) for Liberty Mutual's business judgment in making this decision. *See Ezold, supra.* Moreover, Plaintiff's personal opinion is insufficient to create an issue of fact to defeat summary judgment. *See Wetheimer, supra.*

24.     Consequently, Squeo agreed to extend the Written Warning for another 30 day period because Plaintiff did not "demonstrate the ability to consistently meet and maintain expectations in other areas," the Written Warning was extended for another 30 days on September 16, 2014 ("Second Warning"). (Pl. Dep. Tr., 299:19-301:8; Squeo Dep. Tr., 36:10-37:2; Rygiel-Boyd Cert., Exhs. 7 and 8.)

**Plaintiff's Response:** Agree that the Written Warning was extended for thirty (30) days. Disagree that it was necessary or that Plaintiff did not demonstrate the ability to meet her responsibilities. Further, this extension did not constitute a "Second" Warning as characterized (Thompson, P303, L30 – P306, L6).

**<u>Liberty Mutual's Rebuttal:</u>** The cited portion of Plaintiff's transcript does not support her contention that extending the Written Warning for another 30 days was unnecessary or that she "did not demonstrate the ability to meet her responsibilities." Moreover, Plaintiff's disagreement with Liberty Mutual's reasons for its decisions relating to her employment is improper. It is axiomatic that Plaintiff cannot substitute her own judgment (or the Court's judgment) for Liberty Mutual's business judgment in making this decision. *See Ezold, supra.* Further, Plaintiff's personal opinion is insufficient to create an issue of fact to defeat summary judgment. *See Wetheimer, supra.*

26.     On September 16, 2014, over 30 days after the Written Warning was issued to her, Plaintiff submitted a rebuttal to the Written Warning, which did not relate to Plaintiff's pregnancy. (Pl. Dep. Tr., 295:1-24; Rygiel-Boyd Cert., Exh. 9.)

**<u>Plaintiff's Response:</u>** Agree. Plaintiff submitted a Rebuttal dated 16 September 2014 in an email from Plaintiff to Holt, copying Karlen at HR, which referenced her complaints about work that was left for her on return from her disability/medical leave and other harassment / discrimination associated with her returning from same (Exhibit F)

**<u>Liberty Mutual's Rebuttal:</u>** Plaintiff utterly misrepresents her Rebuttal dated September 16, 2014 that she submitted to Holt. Nowhere in her Rebuttal does she complain about or even refer to complaints of discrimination and/or harassment. Rather, Plaintiff expressed her disagreement with the Company's decision to place her on a written warning due to job performance issues.

30.     Her overall performance rating was a 5 on a scale of 1 – 15 (with a 6 for results rating and a -1 for behaviors rating). (Rygiel-Boyd Cert., Exh. 11.)

**Plaintiff's Response:** Agree that this was the rating provided. Note that Plaintiff maintains it was subjective and inaccurate, and that she was blocked from receiving performance ratings of co-employees from which to compare.

**Liberty Mutual's Rebuttal:** Plaintiff attempts to create an issue of material fact by claiming that her performance rating was "subjective and inaccurate" and that "she was blocked from receiving performance ratings of co-employees from which to compare." However, she failed to cite evidence supporting her assertion and, thus, failed to properly show that this fact is in dispute. *See* Local Civ. Rule 56.1; *see also V.C.*, *supra.* Accordingly, Liberty Mutual respectfully requests that the Court strike and disregard Plaintiff's alleged dispute.

33.     Just prior to submitting her rebuttal to the Written Warning on September 16, 2014, Plaintiff submitted a complaint to Human Resources alleging that Holt discriminated against her because of factors other than pregnancy. (Pl. Dep. Tr., 504:6-18; 507:12-20; Rygiel-Boyd Cert., Exh. 12.)

**Plaintiff's Response:** Agree. Plaintiff filed a formal complaint with HR on 14 September 2014 (Exhibit G) (Thompson, P540, L6-18).

**Liberty Mutual's Rebuttal:** Neither the cited portion of Plaintiff's deposition transcript nor the referenced exhibit support her contention that she filed a complaint with HR on September 14, 2014. Rather, a review of Plaintiff's Exhibits F and G reveals that she sent an email to Jenese Karlen complaining about alleged discrimination on September 16, 2014 at 5:33:28 pm – 73 minutes before she sent her Rebuttal email to Holt at 6:46:19 pm.

34.   HR investigated Plaintiff's complaint, including interviewing Plaintiff. (Pl. Dep. Tr., 504:23-25; 506:1-12.)

**Plaintiff's Response:** Unable to Agree or Disagree. Plaintiff was told her complaint would be investigated (Thompson, P504, L23-25). Mr. Polk testified that he did (as set forth in Plaintiff's prior submission dated 17 January 2020, Exhibit Q), but Defendant maintained it was not an investigation and the Court concurred as a result of which no reports were provided during discovery (Exhibits P and R).

**Liberty Mutual's Rebuttal:** Plaintiff completely mischaracterizes a discovery issue that The Honorable Joseph A. Dickson, U.S.M.J. resolved. In a Joint Letter dated July 19, 2019, Plaintiff sought, among other things, an Order compelling the production of "investigation reports." (Docket Entry No. 30, ¶ C, p. 3.) In response, Liberty Mutual explained that the documents responsive to this request were protected from production in discovery by the attorney-client privilege. (*Id.*, ¶ C, pp. 3-4.) After reviewing this letter, Judge Dickson requested additional briefing explaining the nature of the purported investigation reports and why they are privileged. (Docket Entry No. 34.) In its letter dated October 25, 2019, Liberty Mutual further explained that an attorney in Liberty Mutual's Employment Law Group asked Polk for information relating to his investigation so she could provide her legal assessment. (Docket Entry No. 35.) Nowhere did Liberty Mutual contend that Polk never conducted an investigation. (*Id.*) Similarly, in his Order and Opinion denying Plaintiff's request, Judge Dickson did not conclude that Polk did not investigate Plaintiff's complaint. (Docket Entry No. 38.) Rather, Judge Dickson found that the responsive documents were privileged and, thus, not discoverable. (*Id.*)

35.     Upon concluding its investigation, HR advised Plaintiff that they were unable to substantiate her allegations. (Pl. Dep. Tr., 506:13-507:11.)

**Plaintiff's Response:** Unable to Agree or Disagree. Whether or not Mr. Polk concluded an investigation of discrimination, harassment and bullying by Ms. Skibinsky, he stated to Plaintiff that he could not substantiate her allegations. Disagree that he conducted a thorough investigation and actually *could not* substantiate her claims (Thompson, P617, L24 – P618, L14).

**Liberty Mutual's Rebuttal:** Plaintiff's opinion that HR did not conduct a thorough investigation is immaterial. It is axiomatic that Plaintiff cannot substitute her own judgment (or the Court's judgment) for Liberty Mutual's business judgment in conducting the investigation and reaching its conclusion. *See Ezold, supra.; see also Fiely v. Essex Healthcare Corp.*, 2015 WL 370093, *3 n.4, *4 (N.D. Ohio Jan. 27, 2015) (Plaintiff's arguments regarding the insufficiencies of the company's investigation are "unpersuasive" given that "hindsight one may identify imperfections in the investigation (though I do not), plaintiff has not shown that the investigation was a sham, much less that in any way manifested or sought to cover up [] discrimination."); *Barley v. Wal-Mart Stores East, LP*, 2008 WL 1732945 (N.D. Okl. April 10, 2008) ("Neither [plaintiff] nor this Court may, with the benefit of hindsight, secondguess [HR's] decisions about whom to interview, what questions to ask, how to weigh the evidence, or what conclusions to make. [HR] was entitled to exercise his business judgment.") Moreover, Plaintiff's personal opinion is insufficient to create an issue of fact to defeat summary judgment. *See Wetheimer, supra.*


37.     Skibinsky issued a Verbal Warning to Plaintiff on June 10, 2015 ("Third Warning") because of the "quality of [her] claim handling and the management of [her] inbox." (Pl. Dep. Tr., 310:12-25; 311:6-11; 311:19-312:6; Rygiel-Boyd Cert., Exh. 13.)

**Plaintiff's Response:** Agree. Plaintiff received a Verbal Warning. Disagree that it was justified as she was not informed prior that she did anything wrong (Thompson, P311, L21 – P312, L6). Further, this Warning should not be characterized as a "Third".

**Liberty Mutual's Rebuttal:** Plaintiff's disagreement with Liberty Mutual's reasons for its decisions relating to her employment is improper. It is axiomatic that Plaintiff cannot substitute her own judgment (or the Court's judgment) for Liberty Mutual's business judgment in making this decision. *See Ezold, supra.* Moreover, Plaintiff's personal opinion is insufficient to create an issue of fact to defeat summary judgment. *See Wetheimer, supra.*

38.     Skibinsky then issued a Written Warning to Plaintiff on June 26, 2015 ("Fourth Warning"). (Pl. Dep. Tr., 344:3-23; Rygiel-Boyd Cert., Exh. 14.)

**Plaintiff's Response:** Agree. Plaintiff received a Written Warning. Disagree it was justified as she informed that she wrote on it that her "signature is not agreement, solely compliance" (Thompson, P344, L19-23). Further, this Warning should not be characterized as a "Fourth".

**Liberty Mutual's Rebuttal:** Plaintiff's disagreement with Liberty Mutual's reasons for its decisions relating to her employment is improper. It is axiomatic that Plaintiff cannot substitute her own judgment (or the Court's judgment) for Liberty Mutual's business judgment in making this decision. *See Ezold, supra.* Moreover, Plaintiff's personal opinion is insufficient to create an issue of fact to defeat summary judgment. *See Wetheimer, supra.*

40.     Plaintiff also received a One Time Final Warning for violating the Company's internet usage policy. (Pl. Dep. Tr., 329:21-330:16; Rygiel-Boyd Cert., Exh. 15.)

**Plaintiff's Response:** Agree. Plaintiff received a Warning for Violating Defendant's internet policy – on 26 June 2015, the same day as the Warning in No. 38 above. Disagree she should have received it as co-workers frequently accessed the internet at times during the work day (Thompson, P329, L21 – P332, L18).

**Liberty Mutual's Rebuttal:** Plaintiff's disagreement with Liberty Mutual's reasons for its decisions relating to her employment is improper. It is axiomatic that Plaintiff cannot substitute her own judgment (or the Court's judgment) for Liberty Mutual's business judgment in making this decision. *See Ezold, supra.* Moreover, Plaintiff's personal opinion is insufficient to create an issue of fact to defeat summary judgment. *See Wetheimer, supra.* Moreover, Plaintiff does not cite to any evidence showing that other employees "frequently accessed the internet at times during the work day" and were not disciplined. Instead, she relies on nothing more than her own speculation, which is insufficient. *See Carr v. SRA International, Inc.*, 2020 WL 4529989, \*4 (D.N.J. Aug. 6, 2020) ("'Speculation and conjecture', however, 'may not defeat a motion for summary judgment'")(*quoting Eskridge v. Phil. Housing Auth.*, 722 F. App'x 296, 300 (3d Cir. 2018)).

43.    The next day, January 14, 2016, Karlen sent a follow-up to email to Plaintiff regarding the behavioral issues and policy violations discussed ("Fifth Warning").  (Pl. Dep. Tr., 367:5-24; Rygiel-Boyd Cert., Exh. 16.)

**Plaintiff's Response:** Agree. Karlen sent Plaintiff an email. Disagree there were any actual behavioral issues as well. Further, this Warning should not be characterized as a "Fifth".

**Liberty Mutual's Rebuttal:** Plaintiff's disagreement with Liberty Mutual's reasons for its decisions relating to her employment is improper. It is axiomatic that Plaintiff cannot substitute

her own judgment (or the Court's judgment) for Liberty Mutual's business judgment in making this decision. *See Ezold, supra.* Moreover, Plaintiff's personal opinion is insufficient to create an issue of fact to defeat summary judgment. *See Wetheimer, supra.*

44.     Karlen also sent Plaintiff a follow-up email detailing her various performance issues. (Rygiel-Boyd Cert., Exh. 17.)

**<u>Plaintiff's Response</u>:** Agree that the email was sent. Disagree it was justified.

**<u>Liberty Mutual's Rebuttal</u>:** Plaintiff's disagreement with Liberty Mutual's reasons for its decisions relating to her employment is improper. It is axiomatic that Plaintiff cannot substitute her own judgment (or the Court's judgment) for Liberty Mutual's business judgment in making this decision. *See Ezold, supra.* Moreover, Plaintiff's personal opinion is insufficient to create an issue of fact to defeat summary judgment. *See Wetheimer, supra.*

46.     Her overall performance rating was a 4 on a scale of 1 – 15 (with a 5 for results rating and a -1 for behaviors rating). (Rygiel-Boyd Cert., Exh. 18.)

**<u>Plaintiff's Response</u>:** Agree. That is what it says but dispute accuracy of subjective ratings. Note that Plaintiff maintains it was subjective and inaccurate, and that she was blocked from receiving performance ratings of co-employees from which to compare.

**<u>Liberty Mutual's Rebuttal</u>:** Plaintiff attempts to create an issue of material fact by claiming that her performance rating was "subjective and inaccurate" and that "she was blocked from receiving performance ratings of co-employees from which to compare." However, she failed to cite evidence supporting her assertion and, thus, failed to properly show that this fact is in dispute. *See*

Local Civ. Rule 56.1; *see also V.C.*, *supra.* Accordingly, Liberty Mutual respectfully requests that the Court strike and disregard Plaintiff's alleged dispute.

48.    Plaintiff submitted a complaint to HR on January 25, 2016, alleging that Skibinsky discriminated and harassed her because of factors other than pregnancy. (Pl. Dep. Tr., 530:3-23; Rygiel-Boyd Cert., Exh. 19.)

**Plaintiff's Response:** Agree Plaintiff submitted a complaint to HR on 25 January 2016. Disagree that her complaints were limited to "factors other than pregnancy". The complaint speaks for itself. (Exhibit K)

**Liberty Mutual's Rebuttal:** Plaintiff's attempt to create an issue of fact by disagreeing to the basis of her January 25, 2016 complainant is utterly disingenuous. Glaring absent from this email (submitted as Plaintiff's Exhibit K) is any mention of her pregnancy let alone a complaint of pregnancy discrimination.

49.    HR investigated this complaint. (Polk Dep. Tr., 28:2-25; 35:4-20; 41:19-45:8; 48:10-51:25.)

**Plaintiff's Response:** Unable to Agree or Disagree. Plaintiff was told her complaint would be investigated (Thompson, P504, L23-25). Mr. Polk testified that he did (as set forth in Plaintiff's prior submission dated 17 January 2020, Exhibit Q) but Defendant maintained it was not an investigation and the Court concurred as a result of which no reports were provided during discovery (Exhibits P and R).

**Liberty Mutual's Rebuttal:** Liberty Mutual refers to its Rebuttal to Fact No. 34 and incorporates it herein.

50.     Upon the conclusion of his investigation, Michael Polk, HR Manager, met with Plaintiff on May 16, 2016, and advised her that HR could not substantiate her allegations against Skibinsky. (Pl. Dep. Tr., 616:6-617:20; Polk Dep. Tr., 53:5-10; Rygiel-Boyd Cert., Exh. 20.)

**Plaintiff's Response:** Agree. Whether or not Mr. Polk concluded an investigation of discrimination, harassment and bullying by Ms. Skibinsky, he stated to Plaintiff that he could not substantiate her allegations. Disagree that he conducted a thorough investigation and actually *could not* substantiate her claims (Thompson, P617, L24 – P618, L14).

**Liberty Mutual's Rebuttal:** Plaintiff's opinion that HR did not conduct a thorough investigation is immaterial. It is axiomatic that Plaintiff cannot substitute her own judgment (or the Court's judgment) for Liberty Mutual's business judgment in conducting the investigation and reaching its conclusion. *See Ezold, supra.; see also Fiely v. Essex Healthcare Corp.*, 2015 WL 370093, *3 n.4, *4 (N.D. Ohio Jan. 27, 2015) (Plaintiff's arguments regarding the insufficiencies of the company's investigation are "unpersuasive" given that "hindsight one may identify imperfections in the investigation (though I do not), plaintiff has not shown that the investigation was a sham, much less that in any way manifested or sought to cover up [] discrimination."); *Barley v. Wal-Mart Stores East, LP*, 2008 WL 1732945 (N.D. Okl. April 10, 2008) ("Neither [plaintiff] nor this Court may, with the benefit of hindsight, secondguess [HR's] decisions about whom to interview, what questions to ask, how to weigh the evidence, or what conclusions to make. [HR] was entitled to exercise his business judgment.") Moreover, Plaintiff's personal opinion is insufficient to create an issue of fact to defeat summary judgment. *See Wetheimer, supra.*

52.     This email was the first time Plaintiff notified Liberty Mutual of her pregnancy. (Docket Entry No. 1-1,¶ 250.)

**Plaintiff's Response:** Agree. This was the first "official" notification. Disagree that Plaintiff's Supervisors were not made aware previously.

**Liberty Mutual's Rebuttal:** Plaintiff attempts to create an issue of material fact by claiming that her supervisors were made aware of her pregnancy prior to May 13, 2016. However, she failed to cite evidence supporting her assertion and, thus, failed to properly show that this fact is in dispute. *See* Local Civ. Rule 56.1; *see also V.C.*, *supra.* Accordingly, Liberty Mutual respectfully requests that the Court strike and disregard Plaintiff's alleged dispute.

54.   Skibinsky issued a Written Warning to Plaintiff on May 26, 2016 ("Sixth and Final Warning"). (Pl. Dep. Tr., 390:22-391:19; 393:9-11; Rygiel-Boyd Cert., Exh. 22.)

**Plaintiff's Response:** Agree. Plaintiff received a Written Warning on 26 May 2016 about two (2) weeks after her giving official notification that she was pregnant. Disagree that it was because of her job performance, was only told she "needed to work faster", which she always did (Thompson, P395, L13-19; P397, L6-24). Further, this Warning should not be characterized as a "Sixth".

**Liberty Mutual's Rebuttal:** Plaintiff's disagreement with Liberty Mutual's reasons for its decisions relating to her employment is improper. It is axiomatic that Plaintiff cannot substitute her own judgment (or the Court's judgment) for Liberty Mutual's business judgment in making this decision. *See Ezold, supra.* Moreover, Plaintiff's personal opinion is insufficient to create an issue of fact to defeat summary judgment. *See Wetheimer, supra.*

55.   Skibinsky made the recommendation to issue the Sixth and Final  Warning, but she did not have the authority to issue it. (Skibinsky Dep. Tr. Vol. 2, 25:9-16.)

**Plaintiff's Response:** Agree. Note that Skibinsky gave partial, incomplete and false information to her Supervisors to make the case for adverse employment actions against Plaintiff. Further, this Warning should not be characterized as a "Sixth".

**Liberty Mutual's Rebuttal:** Plaintiff attempts to create an issue of material fact by claiming that "Skibinsky gave partial, incomplete and false information to her Supervisors to make the case for adverse employment actions against Plaintiff," she failed to cite evidence supporting her assertion and, thus, failed to properly show that this fact is in dispute. *See* Local Civ. Rule 56.1; *see also V.C.*, *supra.* Accordingly, Liberty Mutual respectfully requests that the Court strike and disregard Plaintiff's alleged dispute.

56.     Prior to issuing the Sixth and Final  Warning and prior to Plaintiff's notification to Liberty Mutual that she was pregnant, Skibinsky met with Plaintiff on, at least, 13 occasions, to counsel and coach Plaintiff's performance issues. (Rygiel-Boyd Cert., Exh. 22.)

**Plaintiff's Response:** Agree that Plaintiff met with Skibinsky on many occasions for "coaching". Disagree that there were real performance issues. Further, this Warning should not be characterized as a "Sixth".

**Liberty Mutual's Rebuttal:** Plaintiff attempts to create an issue of material fact by disagreeing that "there were real performance issues." However, Plaintiff failed to cite evidence supporting her assertion and, thus, failed to properly show that this fact is in dispute. *See* Local Civ. Rule 56.1; *see also V.C.*, *supra.* Accordingly, Liberty Mutual respectfully requests that the Court strike and disregard Plaintiff's alleged dispute.

57.     Plaintiff admitted that she does not know whether Skibinsky issued the Sixth and Final Warning because she was pregnant. (Pl. Dep. Tr., 408:1-11.)

**Plaintiff's Response:** Agree. Plaintiff did not know what was in the mind of Skibinsky but did understand she was being subjected to a hostile work environment, due to the complaints filed against Skibinsky for harassment and discrimination which resulted in retaliation against Plaintiff (Thompson, P408, L12-19).

**Liberty Mutual's Rebuttal:** The cited portion of Plaintiff's deposition transcript does not contain any support that Plaintiff understood "she was being subjected to a hostile work environment, due to the complaints filed against Skibinsky for harassment and discrimination which resulted in retaliation against Plaintiff." Nor is it evidence that Plaintiff was subjected to retaliation. At best, it reveals that Plaintiff thought Skibinsky was mad at her for being pregnant based on the treatment that she allegedly received:

> Q:     Did she say anything to you when you told her that you were pregnant that would make you think that she was mad about you being pregnant?
>
> A:     It was the treatment that I received. She did not say anything to me directly, except for an e-mail, something about my date of going out, inquiring about that. That was it. And this was before this write-up.

(Pl. Dep. Tr., 408:12-19.)


58.     Plaintiff admitted that she was not the only pregnant employee. Other employees were also pregnant at the time. (Pl. Dep. Tr., 408:7-10.)

**Plaintiff's Response:** Agree. Note that Plaintiff, as contrasted with other employees, filed formal complaints of harassment and discrimination which resulted in retaliation (Thompson, P408, L12-19).

17

**Liberty Mutual's Rebuttal:** The cited portion of Plaintiff's deposition transcript does not support her contention that other pregnant employees never filed formal complaints of harassment and discrimination. Nor is it evidence that Plaintiff was subjected to retaliation. Liberty Mutual refers the Court to the cited portion of Plaintiff's transcript cited above in paragraph 57 and incorporates it herein.

60.     Because Plaintiff's job performance did not "improve consistently to an acceptable level" after being issued the Sixth and Final Warning, Skibinsky placed Plaintiff on probation on June 27, 2016 for 30 days. (Pl. Dep. Tr., 415:7-416:11; DeBellis Dep. Tr., 79:24-80:16; Rygiel-Boyd Cert., Exh. 23.)

**Plaintiff's Response:** Disagree. Whatever "improved consistently to an acceptable level" means, there was no actual factual basis to place Plaintiff on probation for thirty (30) days beginning on June 27, 2016. Disagree it was justified as she wrote on it that her "signature is not agreement, solely compliance" (Thompson, P416, L3-16). Further, this Warning should not be characterized as a "Sixth".

**Liberty Mutual's Rebuttal:** Plaintiff's disagreement with Liberty Mutual's reasons for its decisions relating to her employment is improper. It is axiomatic that Plaintiff cannot substitute her own judgment (or the Court's judgment) for Liberty Mutual's business judgment in making this decision. *See Ezold, supra.* Moreover, Plaintiff's personal opinion is insufficient to create an issue of fact to defeat summary judgment. *See Wetheimer, supra.*

61.     Skibinsky did not have the authority to issue the probation. She could only make the recommendation to HR. (Skibinsky Dep. Tr. Vol. 2, 36:15-37:3; 38:6-8; 38:16-21.)

**Plaintiff's Response:** Agree. Note that Skibinsky gave partial, incomplete and false information to her Supervisors to make the case for adverse employment actions against Plaintiff.

**Liberty Mutual's Rebuttal:** Plaintiff attempts to create an issue of material fact by asserting that "Skibinsky gave partial, incomplete and false information to her Supervisors to make the case for adverse employment actions against Plaintiff." However, Plaintiff failed to cite evidence supporting her assertion and, thus, failed to properly show that this fact is in dispute. *See* Local Civ. Rule 56.1; *see also V.C.*, *supra.* Accordingly, Liberty Mutual respectfully requests that the Court strike and disregard Plaintiff's alleged dispute.

65. On July 15, 2016, Plaintiff notified Liberty Mutual's HR Support Center that her maternity leave would begin on August 8, 2016. (Pl. Dep. Tr., 438:5-439:7; Rygiel-Boyd Cert., Exh. 24.)

**Plaintiff's Response:** Agree. Plaintiff, however, because of medical complications, Plaintiff's saw her doctor on the night of the 27 July 2016 and he put her out of work as of 28 July 2016 (Thompson, P442, L15-19).

**Liberty Mutual's Rebuttal:** Plaintiff's attempt to qualify her agreement to Fact No. 65 is meaningless. As Plaintiff admitted in response to Fact Nos. 66 and 68 below, she never gave Liberty Mutual the medical note dated July 27, 2016 until two days later on July 29, 2016.

66. On July 27, 2016, Plaintiff's doctor gave her a medical note placing her on maternity leave effective July 28, 2016, but Plaintiff never provided the updated accommodation request and supporting medical document to Liberty Mutual until July 29, 2016, two days after Plaintiff's 30 day probationary period ended. (Pl. Dep. Tr., 455:15-21; 465:23-24.)

**Plaintiff's Response:** Agree. Note Plaintiff did not have a chance to give it to Skibinsky, she started having cramps, called her doctor and informed her Supervisor that she needed to leave immediately. (Thompson, P442, L10 – P446, L19).

**Liberty Mutual's Rebuttal:** Plaintiff incorrectly attempts to paint the picture that she immediately needed to leave work due to a medical issue. Before Plaintiff began to experience cramps, she attended the morning huddle meeting. She did not give the note to her Supervisor during the morning huddle meeting (Pl. Dep. Tr., 442:23-25) or after the huddle meeting ended (*Id.*, 444:2-4). When the huddle meeting ended, she went back to her desk to work and handled an important telephone call with a customer. (*Id.*, 444:5-18.) When the telephone call ended, she then walked to the conference room to meet with her Supervisor. (*Id.*, 444:16-445:1.) It wasn't until she went to the restroom that she started having cramps. (*Id.*, 445:2-3.)

69.    After Plaintiff's probationary period expired, Skibinsky recommended that Plaintiff's employment be terminated due to her continued performance issues. (Skibinsky Dep. Tr. Vol. 2, 40:12-25; 41:11-42:19; Rygiel-Boyd Cert., Exh. 25.)

**Plaintiff's Response:** Agree in part Skibinsky recommended Plaintiff's employment be terminated before and at this time. Disagree there were continuing performance issues.

**Liberty Mutual's Rebuttal:** Plaintiff attempts to create an issue of material fact by disagreeing that "there were continuing performance issues." However, Plaintiff failed to cite evidence supporting her assertion and, thus, failed to properly show that this fact is in dispute. *See* Local Civ. Rule 56.1; *see also V.C.*, *supra.* Accordingly, Liberty Mutual respectfully requests that the Court strike and disregard Plaintiff's alleged dispute.

71.     In considering that recommendation, DeBellis reviewed Plaintiff's performance reviews and disciplinary notices. (DeBellis Dep. Tr., 52:2-7; 73:18-74:10; 117:2-13; Rygiel-Boyd Cert., Exh. 25.)

**Plaintiff's Response:** Disagree. DeBellis testified she did not review Plaintiff's entire Personnel file and was not aware of Mr. Polk's involvement in the investigation, that Ms. Skibinsky was the subject of the complaints and was the one who recommended Plaintiff's termination. (DeBellis, P74, L 11 – P76, L6).

**Liberty Mutual's Rebuttal:** The cited portion of DeBellis' deposition testimony does not support Plaintiff's denial of the fact that DeBellis reviewed Plaintiff's performance reviews and disciplinary notices while considering the recommendation to terminate Plaintiff's employment. In fact, the cited portion further shows that DeBellis made her decision based solely upon Plaintiff's performance:

> When I reviewed the recommendation and prior to the actual day of decision to agree, it was purely based on performance that was provided, information provided to me and prior discussions with Michelle Skibinsky. I believe I had conversations with Kerryanne Holliss. My recall is that I was involved in discussions with Michael Polk and others about Laytoya's overall performance.

(DeBellis Dep. Tr., 75:14-22.)

80.     DeBellis, along with Tressa Schnippel, was calling Plaintiff to advise her of the Company's termination decision since DeBellis did not meet with Plaintiff on July 28. (DeBellis Dep. Tr., 54:4-55:6; 114:7-115:11.)

**Plaintiff's Response:** Unaware. Note Plaintiff was on disability leave beginning A.M. on 29 July 2016 (Thompson, P475, L2-7).

**Liberty Mutual's Rebuttal:** As Plaintiff admitted in response to Fact Nos. 66 and 68 below, she never gave Liberty Mutual the medical note dated July 27, 2016 placing her on maternity leave effective July 28, 2016 until two days later on July 29, 2016. Plaintiff cites no evidence that either DeBellis or Schnippel were aware of this new starting date when they called her to notify her of the termination decision. Moreover, because Plaintiff failed to either admit or deny this fact, it must be deemed undisputed. *See* L. Civ. R. 56.1 ("any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.")

83.    Liberty Mutual sent a termination letter via FedEx overnight mail on August 1, 2016. (Rygiel-Boyd Cert., Exh. 28.)

**Plaintiff's Response:** Unaware. Plaintiff did not receive it (Thompson. P467, L2-7; P468, L2-4).

**Liberty Mutual's Rebuttal:** Because Plaintiff failed to either admit or deny this fact, it must be deemed undisputed. *See* L. Civ. R. 56.1 ("any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.")

84.    Liberty Mutual's termination letter was delivered the next day on August 2, 2016 at 9:50 a.m. when FedEx left it at the front door to Plaintiff's house. (Pl. Dep. Tr., 485:14-18; Rygiel-Boyd Cert., Exh. 29.)

**Plaintiff's Response:** Unaware. Plaintiff did not receive it then (Thompson. P467, L2-7; P468, L2-4).

**Liberty Mutual's Rebuttal:** Because Plaintiff failed to either admit or deny this fact, it must be deemed undisputed. *See* L. Civ. R. 56.1 ("any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.")

85.     Plaintiff did not receive the letter until a week after it was delivered because she shares the front door with another apartment in her building. (Pl. Dep. Tr., 467:2-469:24; 472:8-18.)

**Plaintiff's Response:** Agree. Plaintiff did not receive formal notification of the termination of her employment until on or about 8 August 2016 (Thompson. P472, L15-22).

**Liberty Mutual's Rebuttal:** While Plaintiff admits that she did not receive the termination letter until a week after it was delivered, the cited portion off Plaintiff's deposition testimony further reveals that she may have received an email notification:

> Q:     Okay. And it was your testimony that you received this document approximately a week maybe, at least after it's dated?
>
> A:     Yes. I – I – I am not sure if I got an email of this prior to getting the physical.

(Pl. Dep. Tr., 472:15-19.)

**LIBERTY MUTUAL'S RESPONSE TO PLAINTIFF'S**
**<u>SUPPLEMENTAL STATEMENT OF DISUPTED MATERIAL FACTS</u>**

Plaintiff purports to submit a supplemental statement of material facts as permitted under Local Civil Rule 56.1. However, Plaintiff submitted nothing more than a series of questions, which Liberty Mutual is not required to answer. To the extent any fact can be gleaned from Plaintiff's questions, Liberty Mutual will admit or deny that fact as required under the local rule.

1.      Where is Defendant's detailed reference to Plaintiff's 16 September 2014 Rebuttal to her 2014 Performance Evaluation which complained of disability discrimination? (Exhibit F)

**<u>Liberty Mutual's Response:</u>**Plaintiff completely ignores Liberty Mutual's Fact No. 26, in which Liberty Mutual states: on September 16, 2014, Plaintiff submitted a rebuttal to the Written Warning issued to her on August 13, 2014. **Plaintiff admitted this fact**. However, a review of the Rebuttal (attached as Plaintiff's Exhibit F and Defendant's Exhibit 9) shows that Plaintiff's contention that she complained of disability discrimination is false. Nowhere in her Rebuttal does she complain about or even refer to complaints of discrimination and/or harassment. Rather, Plaintiff expressed her disagreement with the Company's decision to place her on a written warning due to job performance issues.

2.      Where is Defendant's reference to Plaintiff's formal complaint against Ms. Holt dated 16 September 2014 for harassment and disability discrimination. (Exhibit G)

**<u>Liberty Mutual's Response:</u>** Plaintiff completely ignores Liberty Mutual's Fact No. 33, in which Liberty Mutual states: Plaintiff submitted an internal complaint to HR alleging that Holt discriminated against her. **Plaintiff admitted this fact**. However, this Complaint is immaterial to her retaliation claim in this lawsuit, as she did not complain of pregnancy discrimination. As

24

alleged in the Complaint, Plaintiff's retaliation claim is based upon her alleged complaints related to her pregnancy and her alleged disability as a result of her pregnancy.

3.      Where is Defendant's reference to Plaintiff's formal complaint against Ms. Skibinsky dated 25 January 2016 for harassment and discrimination which complained of harassment, and discrimination, hostile work environment and bullying? (Exhibit K)

**Liberty Mutual's Response:** Plaintiff completely ignores Liberty Mutual's Fact No. 48, in which Liberty Mutual states: Plaintiff submitted a complaint to HR on January 25, 2016 alleging that Skibinsky discriminated and harassed. **Plaintiff admitted this fact**. However, this Complaint is immaterial to her retaliation claim in this lawsuit, as she did not complain of pregnancy discrimination. As alleged in the Complaint, Plaintiff's retaliation claim is based upon her alleged complaints related to her pregnancy and her alleged disability as a result of her pregnancy.

4.      Where is Defendant's reference to Plaintiff filing an EEOC Complaint on 9 May 2016 against Defendant which complained of harassment, disability discrimination and stress? (Exhibit J)

**Liberty Mutual's Response:** Liberty Mutual admits that Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission on May 9, 2016 and included it as an exhibit to its motion as Exhibit 36. Notwithstanding, this Charge is immaterial to her retaliation claim in this lawsuit as she did not complain of pregnancy discrimination. As alleged in the Complaint, Plaintiff's retaliation claim is based upon her alleged complaints related to her pregnancy and her alleged disability as a result of her pregnancy.

5.      Where is Defendant's reference to the emails dated 13 July 2016 and its 25 July 2016 which foreshadowed the termination of Plaintiff's employment as its goal before it was communicated? (Exhibits L and N)

**Liberty Mutual's Response:** Liberty Mutual admits that Skibinsky sent an email to Tressa Schnippel regarding Plaintiff's "lack of responsiveness to coaching/feedback" while she was Plaintiff was on probation. (Plaintiff's Exhibit L.) It should not be surprising that termination was a possible result of Plaintiff's probation. The probation notice given to Plaintiff on June 27, 2016 explicitly states that termination was a possible outcome:

> If, at the end of this probationary period, your performance has not improved consistently to an acceptable level, further action may be taken, including *termination of employment*. If at any time during this probationary period your performance deteriorates and/or you demonstrate significant performance failures, further action may be taken prior to the end of the probationary period, up to and including *termination from employment* with or without further notice or opportunity for correction. If after successful completion of this probationary period, your performance deteriorates in the future, further job action may be taken up to and including immediate termination.

(Defendant's Exhibit 23) (emphasis added.)

Further, Liberty Mutual admits that Schnippel sent an email to Skibinsky on July 25, 2016, asking her for a status update on Plaintiff's performance because the probationary period was ending. Specifically, Schnippel asked Skinbinsky:

> At this point, can you verify whether [Plaintiff] has:
> - Successfully completed probation
> - Improved but not to the level needed so therefore we need to extend probation
> - Has not successfully completed the expectations of the probation and therefore recommending termination

(Plaintiff's Exhibit N.)

6.      Significantly, Ms. DeBellis, who had the authority to actually terminate Plaintiff's employment, was unclear when she was aware of formal complaints by Plaintiff against Ms. Holt and then Ms. Skibinsky, and what impact this had on the decision making process when authorizing the firing of Plaintiff (DeBellis, P74, L14 – P75, L-9). She testified that she was "informed by counsel" and it was reasonable to conclude counsel was not involved before litigation and so she did not know that information during the relevant time.

**Liberty Mutual's Response:** Liberty Mutual admits that Ms. DeBellis had no knowledge of Plaintiff's complaints when she made the decision to terminate Plaintiff based on her performance issues. Plaintiff's admitted statement further support's a finding that Ms. DeBellis' termination decision was not retaliation.


7.      Where is Defendant's reference to the email dated 28 July 2016 regarding what was to be said at the exit interview, and noting that if Plaintiff brought up that her leave of absence for short-term disability (STD) had begun, the termination was not to be communicated at that time? (Exhibit O)

**Liberty Mutual's Response:** A review of the Exhibit O shows that it is clearly not an exit interview, but rather a series of talking points prepared for DeBellis' termination meeting with Plaintiff. However, Liberty Mutual denies that DeBellis ever had this discussion with Plaintiff. First, Plaintiff abruptly left work when DeBellis tried to meet with her on July 28, 2016 as detailed above in Fact Nos. 74-78. Then, the call allegedly dropped when DeBellis called her the following day on July 29, 2016 and Plaintiff did not return the call as detailed above in Fact Nos. 79-82.

Respectfully submitted,
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
*Attorneys for Defendant*


 /s/ Steven J. Luckner
Steven J. Luckner, Esq.
Jennifer Rygiel-Boyd, Esq.

Dated: August 31, 2020