CONFIDENTIAL


**Liberty Mutual INSURANCE**

## 2014 Final Performance Review
Review Period 1/1/2014 - 12/31/2014

**REVIEWER**
Debra Holt (Manager)


Latoya Thompson
Tech Claims Specialist I-WC
Job

D-0062


EXHIBIT D-18
11/14/18

My Career & Development Center                CONFIDENTIAL

## Performance Evaluation

### Custom Fields

Summary of Results

Latoya was out on disability for a good portion of the year. She was out from for close to 18 weeks this year. She also worked from home for an additional 8 weeks. While she was out of the office it was made aware that her files were not up to quality standard. Latoya's work fell behind which caused her to go on warning on 8/13/14. Latoya did not take ownership of her lack of work. She was very quick to put fault on her co-workers. Latoya was able to get control of her files and bring them up to quality files. On 10/14/14 Latoya was removed from warning. She has continued to show improvement. Her overall QA score was -5.

**\*\*Behavior Expectation: Consistently demonstrates behaviors referenced in Guiding Principles, Mutual Expectations and applicable capability framework.**

**Start Date**
1/1/2014

**Due Date**
12/31/2014

**Status**
Active

**Categories**
Behavior Objective

| Measures | Start Date | Due Date | Progress |
|---|---|---|---|
| Direct feedback from others (stakeholders, project team members, internal/external customers, etc.) | 1/1/2014 | 12/31/2014 | 0% |
| Observations made by manager (cite specific examples of strength and opportunities.) | 1/1/2014 | 12/31/2014 | 0% |

**Objective Progress Update**

Debra Holt - 8/13/2014 2:22:51 PM
Strengths – Communication- Latoya communicates all information clearly and concisely. She shares an appropriate level of detail and expresses her viewpoints tactfully without creating unnecessary conflict. Focus on Customers- Latoya demonstrates very good customer service skills. Opportunities- Time Management- Latoya should manage her claims with a greater sense of urgency. She needs to plan and organize her work/inbox. This would help improve her settlements and overall quality of work.

| Reviewer | Rating |
|---|---|
| Debra Holt (Manager) | 2 - Partially Met Expectations |

**Comments**

Debra Holt (Manager):
Latoya has strong negotiating skills. Latoya continues to demonstrate good customer service skills. Latoya received a compliment from a petitioner's attorney Jorge Verrgne. He advised that she was very proactive in trying to dispose claim 324-'17823. Latoya become very offensive and disrespectful towards me when advised her work was not up to standards.

My Career & Development Center                    CONFIDENTIAL

## Customer Experience

| Start Date | Due Date | Status |
|---|---|---|
| 1/1/2014 | 12/31/2014 | Active |

**Measures**

| | Start Date | Due Date | Progress |
|---|---|---|---|
| Provide top-tier experience to our unique customer segments as measured by Manager Observation and Results including: • Makes it easy for the Customer to do business with us. • Responsive and proactive communication to agents, brokers, internal/external customers • Build and strengthen relationships and actively partner with internal and external stakeholders • Take ownership and see the work through • Adherence to Customer-Specific programs (SSI's, PG, any specific customer goals, etc.) • Ongoing and appropriate communication with injured workers, providers and employers (direct deal) | 1/1/2014 | 12/31/2014 | 0% |

**Objective Progress Update**

Debra Holt - 8/13/2014 2:23:43 PM
• Latoya demonstrates excellent customer service skills. She continues to communicate with customers, business partners and external stakeholders without any issues. • Latoya complies to SSI's • Latoya's Customer Service QA score YTD is Liberty Standard. She was out on disability in the beginning of the year. She returned on 4/7/14. Her files were scored in June and July. • Latoya had no > $50K LCE communication misses.

**Reviewer** | **Rating**
Debra Holt (Manager) | 3 - Met Expectations

**Comments**

Debra Holt (Manager):
Latoya continues to demonstrate good customer service skills. Her Quality Assurance score in customer service dropped from Liberty Standard at mid year to -5. Latoya has been making sure that she posts all her communications with insureds. She has been making sure to reach out to insureds when cases are resolved in court. Latoya continues to comply with SSI's. Latoya had no >$50K LCE communication misses.

## Efficiency and Scale

| Start Date | Due Date | Status |
|---|---|---|
| 1/1/2014 | 12/31/2014 | Active |

**Measures**

| | Start Date | Due Date | Progress |
|---|---|---|---|
| Leverage our scale and process to deliver claims service at a competitive cost as measured by manager observation and results including, but not limited to: • Resource Usage • Time Management • :A & RMD Roundtable participation and consultation • Timely Licensing and Certification compliance • Timely and appropriate segmentation • Avoid Rework • Execute claim handling holistically • Active participation in LMS and or continuous improvement process to identify and remove waste | 1/1/2014 | 12/31/2014 | 0% |

Thompson v. LM

Career & Development Center

CONFIDENTIAL

### Objective Progress Update

**Debra Holt** - 8/13/2014 2:26:01 PM
- Latoya's position does not require licensing or certification. • Latoya attends all mandatory office training. • She consults regularly with H.O. Examining and Defense counsel. • Latoya should manage her claims with a greater sense of urgency to ensure she meets settlement and quality goals. • Latoya struggles with the volume of work, and should make an effort to structure her day to prioritize her work more effectively. • Latoya missed 14 day requirements on 5 cases that were assigned to her. • Latoya returned to work on 4/7/14, she then went out again on 7/7/14. During the 3 months she was back she barely touched her files. In review of the claims on her assignment 136 were untouched or had one line JE's posted. Essentially no work was really completed on those files. • Latoya needs to treat her mail with a greater sense of urgency. After she went out again on 7/7/14

| Reviewer | Rating |
|---|---|
| Debra Holt (Manager) | 2 - Partially Met Expectations |

### Comments

**Debra Holt (Manager):**
Latoya does a good job utilizing resources to assist in the management of her claims. She continues to work closely with Defense counsel and hearing representatives. She continues to attend all mandatory office training. Latoya struggled with the volume of work which lead to her being placed on warning this year. Her worked improved and we took her off of warning on 10/14/14. Since getting off of warning she has been doing a better job with prioritizing her case load. I have not found other untouched files.

## Employee Engagement

| Start Date | Due Date | Status |
|---|---|---|
| 1/1/2014 | 12/31/2014 | Active |

### Measures

| | Start Date | Due Date | Progress |
|---|---|---|---|
| Contribute to an environment of mutual commitment where claims professionals build careers as measured by Manager Observation and Results including, but not limited to: • Professionalism • Taking Initiative • Teamwork • Responsiveness • Sense of Urgency • Accountability • Flexibility • Active engagement in manager one-on-one • (Sr's) Mentoring of teammates • Ownership and Participation • Active participation in LMS and sustainability (as applicable) OR champion of process improvement / change management Delivery of high quality and compliant work | 1/1/2014 | 12/31/2014 | 0% |

### Objective Progress Update

**Debra Holt** - 8/13/2014 2:26:42 PM
- Latoya demonstrates a positive and high level of professionalism with her team. • Latoya returned in April, and immediately gave the impression that she was engaged and ready to face the challenges presented in her role. However, review of Latoya's claims did not reflect that same level of engagement.

| Reviewer | Rating |
|---|---|
| Debra Holt (Manager) | 2 - Partially Met Expectations |

My Career & Development

**CONFIDENTIAL**

### Comments

**Debra Holt** (Manager):
Latoya does not always come across of a team player. She needs to improve upon her delivery of communication. She had e-mails going back and forth with a coworker which were accusatory and the way things were phrased can put people on the defense rather than opening up a conversation. I provided her with an example on how you could have handled the conversation. Latoya does help out co-workers while they are out of the office.

## Loss Cost Accuracy

| Start Date | Due Date | Status |
|---|---|---|
| 1/1/2014 | 12/31/2014 | Active |

### Measures

| Measure | Start Date | Due Date | Progress |
|---|---|---|---|
| Produce industry best outcomes through well-defined practices and consistent quality claims handling as measured by Manager Observation and Results including, but not limited to: • Quality Assurance Compliance • Quality Standards Compliance • Quality initial investigations • Detailed and case specific recorded interviews • Avoidance of step reserving • Timely recognition of settlement opportunities • Timely IMEs with quality preparation • High Quality Disability Management Skills • Strong Case Pricing and negotiation skills • Quality communication with IW, customers and providers • Claim Disposal • Penalties • First Pays • Financial Management compliance • Responsiveness to management file input • Reserving and Settlement timely and appropriate • Escalation Alert • Pharmacy Management (IFX) • ADC Compliance • PPO Penetration • TTD Days • Litigation Avoidance/Management | 1/1/2014 | 12/31/2014 | 0% |

### Objective Progress Update

**Debra Holt** - 8/13/2014 2:27:52 PM
• Quality Assurance Compliance – Latoya only have files audited in June and July. Her QA score YTD through July is Liberty Standard. • Financial Management- Latoya's QA score in this phase is Liberty Standard. • Strategic Resolution- Latoya's QA score in this phase is Liberty Standard. • Latoya has 3 settlements YTD. Our unit's goal is 10 settlements a month. Latoya needs to be more aggressive with settlements/disposition. She needs to manage her claims with a sense of urgency. • Latoya has 10 closures YTD. Our unit's goal is 20 closures a month.

| Reviewer | Rating |
|---|---|
| **Debra Holt** (Manager) | 3 - Met Expectations |

### Comments

**Debra Holt** (Manager):
Quality Assurance Compliance- Latoya's overall QA score is -5.

Her QA scores by phase are:

Financial Management: Liberty Standard

Strategic Resolution: -5

Customer Service: -5

Litigation Management: -5

My Career & Development  CONFIDENTIAL

Resource Utilization : Liberty Standard.

Latoya received 22 54 notes in 2014. Latoya completes all Escalation Alerts timely.
Latoya had 13 Settlements for the year and 47 closures.

Thompson v. LM

My Career & Development Center

CONFIDENTIAL

## Performance Rating Verification

### Custom Fields

| | |
|---|---|
| Results Rating (What) - Read Only | 6 |
| Behaviors Rating (How) - Read Only | -1 |
| Overall Performance Rating - Read Only | 5 |

Career & Development Center

**CONFIDENTIAL**

## Electronic Sign-Off

X Latoya Thompson
Employee Signature
2/21/2015
Date

X Debra Holt
Manager Signature
2/10/2015
Date

### Comments

**Latoya Thompson (Self):**

My summary of 2014. I was out on disability July 2013. Did my mid-year review telephonically August 2013 and was not given any indication of sub-par work. I returned April 2014 excited to resume my role in the team and with hopes of a promotion in near future; as it has been quite a long time since I was given one. As of May I was under the leadership of Debra Holt. Between May and June the only critiques I was given was about completing tabs in claims overview. During our first meeting Debra Holt inquired about my intentions and I echoed that I want to get promoted and plan to aggressively seek the same once I regained my position with highest settlements in unit. I tackled my workload aggressively as I did in the past. She suggested a better way to manage my inbox and I implemented her suggestion; managing claims off the action plan tickler. I got majority of my workload May/June and my manager gave me a plant closing she previously handled as a TCS1. Unfortunate for me I ruptured my Achilles early July and was unable to return to work. I communicated with my manager and made sure all my task regarding claims summary/review etc. was made known to avoid lateness. Two weeks after my surgery on July 28th, I was contacted by HR and Mike Squeo and informed that I needed to return to work tomorrow or my position would be posted. I was able to get modified work release and cleared to work from home. I returned to work 8/4/2014, my scheduled AWS day off. I was no longer allowed to work my AWS schedule while being home I was instructed. I worked at home with my laptop only, my cell phone and limited resources. On 8/13/2015, after discussing my mid-year review which noted I neglected 136 claims and had 18 piece of mail on my desk from April to July 3,2015; I was told I would be placed on a written warning. I was shocked and noted I had a case load of over 265 claims and was never given a verbal or any indication of sub-par performance. I requested the list of the cases. I reviewed all and realized they were all the action plans that popped up on my action plan tickler in July during my absence. I noted that at any given time you can be given 10 piece of mail one time so I could not definitive dispute that as I was working from home at the given time and unaware of dates. I was informed I had 5 late action plans from re-segmentation. I reminded my manager that there was an accidental bulk delete and I alerted her immediately and noted that I would search for the actions plans and complete. Upon review of the 5, only 3 were late by approximately 3-5 days, 1 case was transferred to me by manager switching her role. Debra Holt sent me an email stipulating the due date which is consistent with actual completion. This was point out several times and yet not revised. Of the 136 cases I alleged neglected I had postings in roughly 80% of them. My manager noted that I posted 1 liners. I acknowledged that the 1 liners were pertinent to the case facts at that time it was posted. My case load consisted of primary second injury fund cases and therefore take a long time to resolve. My settlement opportunity was very limited but I did the best I could and press ahead. I never complained. I maintain that I was written up unfairly and singled out; while working home with limited resources. While on written warning the weekly meeting were unpredictable and seem to only pull 5 to 6 not so perfect cases from my case load for discussion. I was made aware that it is expected for me to set up my perm exam, mail records, write letter to the doctor and wrap up all in same day in case I am absent so another co-worker wouldn't have to do. I was being penalize for my prior disability and now being held at a standard that is not a norm, especially given my workload. None the less, while working from home without a double monitor like my co-workers and limited resources I continued to do my job as diligent as I had in the past. I asked if there were any training plan in place to remedy the issues pertaining to my write-up and never got an answer besides the weekly meeting that were discuss 5-6 cases. In one case, my manager said she saw that I reach out to our attorney but she wanted me to make sure he was sure he did what he said he needed to do when case was next listed ; I explained that the case wasn't listed yet so he wouldn't have been able to take the determined actions. However, I complied with her request. During a meeting on 9/16/2015 with Mike Squeo and Debra Holt, It was stated that I improved my work quality but not enough so I was placed on another 30 day written warning. In addition it was now noted I was not a team player and an email was referenced with Cyndy Everson regarding a directive to

My Career & Development Center          CONFIDENTIAL

the team from Debra Holt to send me cases starting on a specific date. My co-worker sent multiple cases prior to the stipulated date and I sent email seeking clarity on the same. I never sent the cases back to my co-worker and later learnt that my manager and the co-work had revised the directive. This was not made aware to myself or the other teammates. All in all, the next day I received an email from my manager saying my communication was unprofessional. I asked for clarity on the issue, she stated it was accusatory and told me how I should have addressed the email. I was taken off written warning on 10/14/15 as it was noted my work was up to par. I continued to work as diligent as I continued to do from the start of my career with the company.

Performance reviews are in place to measure ones output compared with expectations in place; it primarily results in a mix of negatives and positives. Performance reviews provides an opportunity to grow and improve and I always welcome a challenge to improve myself. This review highlights my absence due to disability, the alleged neglect of 136 cases, 5 late action plans, lack of work ownership, offensive and disrespectful behaviors and accusatory dialogue with co-worker. The only positives noted was strong negotiation skills and compliment from attorney. When I met with my manager, I reminded her of several of the positive things that were lacking in detailed on this review. I referenced case #763968 (Ekeh), in which I was involved in countless conference calls and had a different viewpoint from our counsel Bob Gilbert but was never offensive or rude to him. I did stellar investigation on this claim and this was not spelled out in this review like the conversation with Cyndy Everson via email. I noted I can give you tons of objective positives things (Conners-665471, Van Hoy- A43392, Duarte A43699-investigation) and it seemed it would not deter this negative perception/assessment which is greatly disappointing. We are all different people who communicate differently and while working it should be healthy to have business communication regarding the work product; no one should be denied that. I requested partial credit for the batch settlement I worked on from May to July when my manager re-assigned to my coworker. Debra Holt stated if nothing is in the file it never existed. I reviewed all files and confirmed I posted all on 5/2/2015 and several had case evaluations posted in June. I reminded Debra Holt that she would stop by my desk weekly to follow-up on progress and we were just waiting for attorney to provide settlement conference date to wrap up settlements. After all this, my manager stated she is not giving me any partial credit on the batch settlement. I noted that I did attend HR share day, not mentioned on my review. Had no issues with claims reviews. Had no bills for not sending records out to medical doctor in time for permanency appointment. Had no complaints with any customer, defense counsel or petitioner attorneys. All in all, I attempted to show my manager my continue positive contribution to this company but it was futile. I asked for specific examples on how I was disrespectful and offensive and have yet to receive anything on the same. I asked for examples of not taking ownership of my work also and continue to wait for specifics. I respect my manager and would never disrespect a coworker much less any manager. I behave in a professional manner at all times and give courtesy to my teammates. I take my career seriously and is anxious to address the negatives barriers stated. I have inquired about training from August and continue to do the same; have not gotten any feedback on any development plan. I had no indication I would be written up especially due to the limited time being back to work and never having such a hurdle for the prior 6 years with the company. In conclusion, I anxiously wait for my managers examples of the negatives in this performance review so that a viable resolution can be explored. I see my manager and myself as a team (when I do good, it reflects on her leadership positively); so if my manager views me in this negative manner my growth and development success is doomed. Therefore it is imperative to me to identify the examples so implementation of training can be done to rectify the perceived issues. I am open to all feedback and intend to use all for my positive growth and development.