**CONFIDENTIAL**

**Message**

**From:** Thompson, Latoya [/O=LIBERTYMUTUAL/OU=HOMEOFFICE/CN=RECIPIENTS/CN=Ñ0170469]
**Sent:** 9/16/2014 6:46:19 PM
**To:** Holt, Debra [/O=LIBERTYMUTUAL/OU=HomeOffice/cn=Recipients/cn=Debra.Holt]; Karlen, Jenese 0354HR [/O=LIBERTYMUTUAL/OU=HomeOffice/cn=Recipients/cn=N0080748]
**Subject:** RE: Thompson_Latoya - Written Warning 8 12 14
**Attachments:** 09-12-14 rebuttal letter to 30 day written warning.docx

Please see my attached rebuttal letter in response to the Written warning I was given on 8/13/14. I thank you in advance for your time.

Thanks,

Latoya Thompson, MBA

---

**From:** Holt, Debra
**Sent:** Friday, August 22, 2014 2:09 PM
**To:** Thompson, Latoya
**Subject:** Thompson_Latoya - Written Warning 8 12 14 (2) (5)

Latoya,
I forgot to send you the updated letter with the correct dates.

Thank you,

DEBRA HOLT | CLAIMS TEAM MANAGER
Liberty Mutual Insurance | Commercial Insurance Claims | Field Operations
(O) 800.900.4875, ext 21117 | (F) 603.427.2668 | Debra.Holt@libertymutual.com
Please let my manager know how I am doing! email: Michael.Squeo@LibertyMutual.com

LIB_ESI_0222



CONFIDENTIAL

To: Debra Holt, Team Manager; Jenese Karlen, Human Resources

From: Latoya Thompson, Technical Claims Specialist

Re: Job Performance- Written Warning Rebuttal

Date: August 18, 2014

---

This letter is my rebuttal to the discussion that occurred on 8/13/2014. I want to declare that I take my job seriously, understand my role and how it contributes value to the company's mission. The letter I received via email on 8/15/2014 noted that discussions were had on 8/12/14 and that was incorrect. I alerted my manager and it was revised accordingly. I want to declare that I take my job seriously, understand my role and how it contributes value to the company's success. I was taken aback to discover that my manager as of 5/1/2014 officially concluded that I neglected 136 of my 257 caseload on 8/13/2014. I was given a disadvantage in my team after coming off my disability on 4/7/2014 and subsequently set up to fail. This is validated in my opinion by this 30 day written warning and whatever follows next. I conclude this based on the following:

Debra Holt and I worked in the same unit for several years under different managers and lastly under the same manager; Edie McGinn for about 2 years. Consequently, our understanding of the job function of a Technical Claims Specialist is equivalent.

For numerous years I was a top performer in the specialty unit, consistently superseding all my teammates in the unit; until my FMLA absence on 7/2013. I remain a team player who was always supportive and encouraging of my co-workers growth.

I have been with Liberty Mutual for 6 years and not once prior to my management under Debra Holt which totals 46 days inclusive of holidays under her supervision; was my work quality questioned or warranting any disciplinary actions; instead it was commended in my prior OSPE (Performance Evaluation) as a solid work product. I was noted as an aggressive case manager who always pushed disposition. TM Holt never gave any indication of disapproval or verbal warning regarding my work quality until 8/12/2014.

When I returned from disability on 4/7/2014, I learned that my whole caseload was given to CM Sylvester and I would not get any of them back. Other teammates were given the liberty to unload cases to me in bulk on an ongoing basis. The majority of these consisted of disasters they no longer wanted to handle, Second Injury Fund (SIF) cases and cases needing permanency exams before proceeding with resolution. The odds of having a high settlement output on these claims are rare or months down the line. Ongoing re-segs occurred through 6/20/2014; my inbox was not stable. I never once complained but clearly this is a set- up for failure.

Once cases were assigned to me, I reviewed to acclimate myself. TM Holt informed me that all cases coming over should be up to date; therefore I did not need to review each of them until the next scheduled Action Plan came up. I agreed to implement her tactic after I initially saw cases, as all these cases were new to me. CM Lucia uses this method and they both explained the benefit resulting in less clutter in the inbox. I agreed to show I was willing to learn something new.

I completed a bulk delete while trying to implement the TM's suggestion of deleting the re-segmentation activities and all the activities that came with new case and accidentally deleted 3 initial Action Plan activities. I brought to this her attention immediately and began searching for the deleted cases. This was a rarity and not a trend; based on my conversation with my manager, she concurred. I received a total of 46 new cases requiring Initial Action Plans; 43 out of 46 done timely.

On 6/24/2014, TM Debra Holt emailed me noting I had 117 activities in my inbox for that Tuesday and she asked for my plan on how I plan to complete the work. I responded that given that for that whole week I only had 158 activities, I would do as much as I can each day and do it on a rolling basis (approx. 39 activities a day). Ultimately, I delivered quality work with this method ongoing.

I was assigned to a plant closure with HR Jones and I priced all case and submitted to HR Jones. Conference date was delayed due to ___'s schedule conflicts. TM Holt transferred these cases to CM Sylvester after I was out of work 7/7/14 – 8/3/14. I lost 17-18 potential ___ements that I worked on. I was severely micro-managed by TM Holt especially concerning this plant closure and my time.

1

CONFIDENTIAL

Based on the circumstance of coming back from disability, inheriting 257 new cases in a short time frame most of which warranted ~nanency exams and in-depth case management; I was not granted a reasonable amount of time to acclimate myself and work cases ..roughly while implementing the changes that occurred while I was out on leave.

Regarding the 18 piece of mail on my desk; I never had a mail issue before. I am unaware of such a high count. The amount of mail delivered to a desk at a time can vary. With an inherited caseload, all 18 pieces of mail may not have been given to me originally. This can perhaps attribute to some possible delay. Therefore, it cannot be definitively stated that I neglected my mail. I am currently working remotely and have no direct access to my mail. Upon my return I will make sure that I don't have any mail on my desk to remedy this concern.

There are no protocols in place to stipulate how or how not to manage your workload/inbox or a defined timeline for setting up perm appointments, sending out records and sending out authorization letters to doctors. Several managers and I discussed this in the past and it was confirmed the inbox is the employee space to manage their workload and in-fact there is no protocol to govern that. The objective is to get your work done timely; every case manager has their own method. The big issue is who is defining timely and by what standards? It appears my interpretation of timely is no longer acceptable as it was consecutively for 6 years after returning from disability. Ineffectiveness can be measured by an increase in addendum fees due to lack of sending out records timely to doctors. This has not been an occurrence of mine since returning from disability 4/2014 or prior.

In conclusion, my strategy for completing my work for the past 6 year produced successful results confirmed by high disposition. There is lack of quantitative evidence to support the basis of this written warning. I deem it to be a pre-mature write-up given factors listed in the body of this rebuttal or strategic for my failure. The 136 cases highlighted as being neglected were all cases that popped up in my inbox while I was on leave from 7/7/14 onward. Every case that anyone had to review in my absence was deemed as a neglected case by TM Holt. How can I neglect a case given to me from end of 4/2014 through 6/20/2014 on a 30 – 90 day review cycle? And per TM Holts suggestion, I am to wait for the subsequent action plans to manage case ongoing as all cases were 'ated. On the other hand, cases that I reviewed and posted, TM Holt noted I placed 1 liner in the file. This denotes neglect, however ... on my review I posted relevant information to the case facts at the given time. It is unfair that I am indirectly being held accountable for my work during my recent absence from 7/7/14 – 8/1/14 but it is being portrayed as work from 4/14 – 7/3/14. If I posted relevant one liner it wasn't substantial enough for TM Holt and perceived as neglected cases. The SIF cases drag out for a long time in court due to complexity and majority of my caseload consist of these. Majority of the highlighted 136 cases warranted no posting as there were no change/updates due to prolong hearing dates. When the tickler for these cases appeared in July, it was perceived as neglected cases. Lastly, I was not aware I was going to get audited for the month of August due to my leave. To my surprise I was audited and I received 2 LS and 1NI. TM noted she will forward the 2 LS (Liberty Standard) scores to prior CMs as they had files longer and I should keep the NI (Need Improvement) score; I got all files around the same time. TM Holt gave my teammates a heads up on their files that would be audited for August; but I never got this heads up and it negatively impacted my QA score. I feel like the odds are stacked against me and continue to mount; I feel singled out. I have done many positive things, like getting a compliment from an attorney I settled a case with regarding my aggressiveness to settling cases and the fact that more adjuster at Liberty should emulate my work ethic for greater disposition. This was compliment was never noted in my Mid-year review, amongst other positive things. This is expected if the objective is not to highlight me in a positive light or as competent in my job role. I am solving difficult cases, working with attorney to push dispositions, being aggressive but at this time the shade of gray or reasonable time is just not in my favor as it did consecutively for 6 years since returning from my disability leave. I love Liberty Mutual as a company and support their mission. I am a strong dedicated worker whose progress and career excellence is being unfairly blemished by this unsubstantiated write-up

Best Regards,


Latoya Thompson, MBA

2

CONFIDENTIAL

Excerpts:

5 late initial Action Plans:

1) A54982- Case was re-segmented on 6/26/14; the 14th day is 7/10/2014. I was out on leave as of 7/7/2014 and due date was 7/10/14. CM Sylvester posted on 7/10 in my absence. This was not a late posting.
2) A50067 (#25 of 137)-I received an email from my then co-worker Debra Holt on 4/23/14 which stated she is going to re-seg the case to my caseload and the 14th day is 4/24/14. I completed action plan on 4/24/14. If this is late, this would be on Debra Holt's clock while in her role as a TCS, not mine.
3) A32150 (#42 of 137) - Case was re-seg 6/10/14. The 14th day was 6/25/2014. On 6/11/11 I alerted TM on accidental bulk delete creating confusion in inbox. I located case on 6/29/14 and completed action plan. 4 days late.
4) A42106 (#78 of 137) - Case was re-seg 6/10/2014. The 14th day was 6/25/2014. On 6/11/11 I alerted TM on accidental bulk delete creating confusion in inbox. I located case on 6/29/14 and completed action plan. 4 days late.
5) 725517 (#109 of 137) - Same as above but 6 days Late.

Email confirmations:

From: Holt, Debra
Sent: Wednesday, April 23, 2014 12:43 PM
To: Thompson, Latoya
Subject: 324-A50067 ███
Importance: High

Latoya,

I am sending you this claim. Tomorrow is the 14th day to due an AP.

Thanks,

DEBRA HOLT | CLAIMS TEAM MANAGER
Liberty Mutual Insurance | Commercial Insurance Claims | Field Operations

From: Jorge Vergne [mailto:JVergne@weinermazzei.com]
Sent: Friday, May 09, 2014 11:56 AM
To: Mcginn, Edie
Subject: FW: ███ - WC324-717823

Dear Ms. McGinn:

███████████████
███████████████
███████████████
███████████████

Thanks,

Jorge Vergne, Esq

3

LIB_ESI_0225