CONFIDENTIAL



# 2015 Final Performance Review
Review Period  1/1/2015 - 12/31/2015

**REVIEWER**
Michelle Skibinsky (Manager)



Latoya Thompson
Tech Claims Specialist I-WC
Job

D-0071



My Career & Development Center

CONFIDENTIAL

## Performance Evaluation

### Additional Information

Summary of Results — See below:

**\*\* CI BEHAVIORAL OBJECTIVE:** Consistently demonstrates expected behaviors for role as referenced in applicable role framework, Liberty Mutual guiding principles and Mutual Expectations. Understands how individual performance contributes to achievement of Commercial Insurance priorities and adds value to our customers.

**Start Date**
1/1/2015

**Due Date**
12/31/2015

**Status**
Active

### Measures

| Measure | Start Date | Due Date | Progress |
|---|---|---|---|
| Consistently demonstrates skills, behaviors, and capabilities required for their role. Exhibits traits expected for Commercial Insurance employees (responsive, expert, disciplined, accountable, urgent, results-oriented, inquisitive, innovative, data-driven and respectful). | 1/1/2015 | 12/31/2015 | 0% |
| Identifies opportunities to improve work processes and outcomes and actively participates in improvement initiatives. Works with manager to identify and act on development needs and proactively engages in career planning. | 1/1/2015 | 12/31/2015 | 0% |
| Takes personal responsibility for creating a safe and health environment where employees feel valued for their individual traits, skills, talents and work. | 1/1/2015 | 12/31/2015 | 0% |

### Objective Progress Update

**Michelle Skibinsky - 7/24/2015 5:21:34 PM**
Year to date Latoya has been struggling with meeting the expectations of her role. As a result, many coaching sessions have been held outside of the monthly one-on-ones. During these sessions, Latoya was often times not receptive to the recommendations and unwilling to work on the issues identified that would ultimately improve the quality of her claim handling. On several occasions Latoya became argumentative and did not take ownership of errors that were identified. Latoya was issued a "One Time Final Warning" for excessive personal internet usage. Latoya was advised not to discuss her performance situation with her co-workers and to consult her Team Manager regarding any questions she has pertaining to protocols and Quality Standards in lieu of her peers.

| Reviewer | Rating |
|---|---|
| Michelle Skibinsky (Manager) | 2 - Partially Met Expectations |

### Comments

**Michelle Skibinsky (Manager):**
Year to date Latoya has been struggling with meeting the expectations of her role. As a result, many coaching sessions have been held outside of the monthly one-on-ones. During these sessions, Latoya was often times not receptive to the recommendations and unwilling to work on the issues identified that would ultimately improve the quality of her claim handling. On several occasions Latoya became argumentative and did not take ownership of errors that were identified.

My Career & Development Center                    **CONFIDENTIAL**

Latoya was issued a "One Time Final Warning" for excessive personal internet usage. Latoya was advised not to discuss her performance situation with her co-workers and to consult her Team Manager regarding any questions she has pertaining to protocols and Quality Standards in lieu of her peers.

## Customer Experience: Deliver a top tier customer experience to our unique customer segments as measured by manager observation, telephony metrics and results including:

**Start Date**
1/1/2015

**Due Date**
12/31/2015

**Status**
Active

**Categories**
Core Objective CI

### Measures

| | Start Date | Due Date | Progress |
|---|---|---|---|
| Service Principles: Demonstrate CI Claims Service Principles in work product, Build and strengthen relationships and actively partner with internal and external stakeholders, Closed Loop Feedback, Claim Review Survey, Agent/Broker quarterly Pulse survey, Claims Agency Partnership outreach program, Timely and appropriate customer service as measured by QA Phase, Compliance with Special Service Instructions | 1/1/2015 | 12/31/2015 | 0% |

### Objective Progress Update

Michelle Skibinsky - 8/10/2015 3:07:04 PM
Latoya's QA score in Customer Service phase through 7/30/15 is (-2). Latoya struggles with proactive customer service and providing timely responses to customer's inquiries. An area for improvement for Latoya would be to respond to customer/broker/agent's inquiries and concerns per Quality Standards as well as consistently complying with SSIs.

### Reviewer
Michelle Skibinsky (Manager)

### Rating
2 - Partially Met Expectations

### Comments

Michelle Skibinsky (Manager):
Latoya's QA score in Customer Service phase through August 2015 is (-2). Latoya struggles with proactive customer service and providing timely responses to customer's inquiries. Often times, Latoya will provide a customer/agent/broker with an update and fail to respond to their questions. An area for improvement for Latoya would be to respond to customer/broker/agent's inquiries and concerns per Quality Standards, ensure their inquiries and concerns are fully addressed, and consistently comply with SSIs

## Efficiency and Scale: Leverage our scale and processes to deliver claims service at a competitive cost as measured by manager observation and results including but not limited to:

**Start Date**
1/2015

**Due Date**
12/31/2015

**Status**
Active

**Categories**
Core Objective CI

My Career & Development  CONFIDENTIAL

| Measures | Start Date | Due Date | Progress |
|---|---|---|---|
| Resource Usage, Time Management, EA & RMD Roundtable participation and consultation, Timely Licensing and Certification compliance, Timely and appropriate segmentation, Avoid Rework, Execute claim handling holistically, Active participation in LMS and or continuous improvement process to identify and remove waste | 1/1/2015 | 12/31/2015 | 0% |

**Objective Progress Update**

Michelle Skibinsky - 8/10/2015 3:08:00 PM
Latoya's QA score in the Resource Utilization phase through 7/30/15 is (-3). Latoya frequently does not respond to defense counsel timely. Her files consistently reflect a lack of collaboration with the assigned defense attorney as well as evidence of defense counsel's requests for the same information on multiple occasions. As a result, there is a delay in the final resolution of these claims. Managing daily activities in her inbox presents a challenge for Latoya. Activities were consistently being moved without sufficient efforts to address outstanding issues on those files. As a result, Latoya was instructed not to move the Resolution Strategy activity unless the resolution strategy was updated within the last 90 days.

| Reviewer | Rating |
|---|---|
| Michelle Skibinsky (Manager) | 1 - Below Expectations |

**Comments**

Michelle Skibinsky (Manager):
Latoya's QA score in the Resource Utilization phase through August 2015 is (-3). Latoya frequently does not respond to 'efense counsel timely. Her files consistently reflect a lack of collaboration with the assigned defense attorney as well as vidence of defense counsel's requests for the same information on multiple occasions. As a result, there is a delay in the final resolution of these claims. Managing daily activities in her inbox presents a challenge for Latoya. Activities were consistently being moved without sufficient efforts to address outstanding issues on those files. As a result, Latoya was instructed not to move the Resolution Strategy activity unless the resolution strategy was updated within the last 90 days

**Employee Engagement:** Contribute to an environment of mutual commitment where claims professionals build careers as measured by manager observation and results including but not limited to:

Start Date
1/1/2015

Due Date
12/31/2015

Status
Active

Categories
Core Objective CI

| Measures | Start Date | Due Date | Progress |
|---|---|---|---|
| Professionalism, Taking Initiative, Teamwork, Flexibility, Active Engagement in manager one on one, Ownership and participation, Delivery of high quality and compliant work | 1/1/2015 | 12/31/2015 | 0% |

**Objective Progress Update**

Michelle Skibinsky - 8/10/2015 3:08:39 PM
Latoya received compliments on being an active participant in the One Focus training sessions in St. Louis. Latoya does not take initiative to cover for her teammates when they are out of the office. She can also work on volunteering for special assignments and projects. Often times, Latoya does not respond to her team member's inquiries or collaborate with them on

M. Career & Development Center

CONFIDENTIAL

pertinent issues. Latoya has not been actively engaged in team huddles. She can seek to improve her contributions and ability to be a team player as we move forward this year.

| Reviewer | Rating |
|---|---|
| **Michelle Skibinsky** (Manager) | 2 - Partially Met Expectations |

**Comments**

**Michelle Skibinsky** (Manager):
Latoya received compliments on being an active participant in the One Focus training sessions in St. Louis. Latoya does not take initiative to cover for her teammates when they are out of the office. She can also work on volunteering for special assignments and projects. Often times, Latoya does not respond to her team member's inquiries or collaborate with them on pertinent issues. Latoya has not been actively engaged in team huddles. She can seek to improve her contributions and ability to be a team player as we move forward this year.

**Loss Cost Accuracy:** Produce industry best outcomes through well defined practices and consistent quality claims handling as measured by manager observation and results including, but not limited to:

**Start Date**
1/1/2015

**Due Date**
12/31/2015

**Status**
Active

ategories
Core Objective CI

| Measures | Start Date | Due Date | Progress |
|---|---|---|---|
| Quality Assurance Compliance, Quality Standards Compliance, Quality Initial Investigations, Detailed and case specific recorded interviews, Avoidance of step reserving, Consistently demonstrates the capabilities and behaviors necessary to adopt and appropriately execute ONE Focus principles, Timely recognition of settlement opportunities, Timely IMEs with quality preparation, High Quality Disability Management Skills, Strong Case Pricing and negotiation skills, Quality communication with IW, customers and providers, Claim Disposal, Penalties, First Pays, Financial Management compliance, Responsiveness to management file input, Reserving and Settlement timely and appropriate, Escalation Alert, Pharmacy Management (IFX), ADC Compliance, PPO Penetration, TTD Days, Litigation Avoidance/Management | 1/1/2015 | 12/31/2015 | 0% |

**Objective Progress Update**

Michelle Skibinsky - 8/10/2015 3:10:26 PM
Latoya's overall QA Score through July 2015 is (-10). Latoya's resolution strategies are not appropriately updated and demonstrate evidence of copy/paste of other case handler's work, particularly with facts that are no longer accurate or relevant. Often times, opportunities to mitigate costs and facilitate a prompt resolution are not recognized. Latoya does not coordinate permanency evaluations timely. Often times, not all parties are notified of the appointment, the exam is not cancelled timely when needed, or the records are not sent to the provider. This results in unnecessary costs. Latoya's QA score for the Strategic Resolution phase, cumulatively through July 2015 is (-19), with the most recent's month score of (-67). Latoya's files demonstrate a lack of timely effort to posture the case for resolution and initiate negotiations prior to the hearings. As a result, there is additional delay in resolution and closure. One Focus principles are not consistently evident in case handling. Often times, pricing of the claims is not appropriate and supporting rationale is not provided. Latoya does not

My Career & Development Center

CONFIDENTIAL

.neet due dates for specific activities assigned by the Team Manager. She struggles with taking ownership of her claims and at times inappropriately defers decisions or strategies to the Team Manager. Latoya's has settled/closed 94 claims combined YTD through June 2015. Latoya can strive to improve her disposition numbers as well as the quality of her claim handling as we move forward this year.

| Reviewer | Rating |
|---|---|
| Michelle Skibinsky (Manager) | 1 - Below Expectations |

**Comments**

Michelle Skibinsky (Manager):
Latoya's overall QA Score through August 2015 is (-8). Latoya's resolution strategies are not appropriately updated and demonstrate evidence of copy/paste of other case handler's work, particularly with facts that are no longer accurate or relevant. Often times, opportunities to mitigate costs and facilitate a prompt resolution are not recognized. Latoya does not coordinate permanency evaluations timely. Often times, not all parties are notified of the appointment; the exam is not cancelled timely when needed, or the records are not sent to the provider. This results in unnecessary costs. Latoya's QA score for the Strategic Resolution phase, cumulatively through August 2015 is (-19), with the last month's score of (-67). Latoya's files demonstrate a lack of timely effort to posture the case for resolution and initiate negotiations prior to the hearings. As a result, there is additional delay in resolution and closure. One Focus principles are not consistently evident in case handling. Often times, pricing of the claims is not appropriate and supporting rationale is not provided. Latoya does not meet due dates for specific activities assigned by the Team Manager. She struggles with taking ownership of her claims and at times inappropriately defers decisions or strategies to the Team Manager. Latoya's files are not consistently reserved properly and has received (16) mandatory reserve change notice (54 note) in 2015. Her QA Score for Financial Management through August 2015 is (-4). Latoya's has settled/closed 94 claims combined YTD through July 2015. Latoya can strive to improve her disposition numbers as well as the quality of her claim handling as we move forward this year.

My Career & Development Center　　　　CONFIDENTIAL

## Performance Rating Verification

### Additional Information

| | |
|---|---|
| Results Rating (What) - Read Only | 5 |
| Behavior Rating (How) - Read Only | -1 |
| Overall Performance Rating - Read Only | 4 |

My Career & Development Center

CONFIDENTIAL

**Electronic Sign-Off**

X Latoya Thompson
Employee Signature
2/24/2016
Date

X Michelle Skibinsky
Manager Signature
1/29/2016
Date

**Comments**

**Latoya Thompson (Self):**
Behavior: Prior to 6/10/15, I was never classified as struggling with my work and subjected to any coaching sessions. I held the highest caseload in the team from January 2015 and still managed to be in the range with my team in disposition. The team was understaffed as of 1/3/15. I received a compliment from Glenn Daly regarding my work on 1/29/15, "Latoya did a great job on this settlement". On 4/2/15, I received a compliment from an insured "Nice work". I shared with TM Skibinsky and she noted "Although this is a good result, unfortunately it does not constitute as a customer compliment as you did not settle the file" so I was not given credit for this. On 4/7/15, TM Skibinsky sent an email on the team EDM inboxes; I had the second lowest (Groves: 12, Latoya: 30, Leon: 40, Lucia 61, Sylvester: 120 and Everson 249. If I was struggling with my work this number would be much higher. After the One Focus training 4/8/15 and 4/9/15- Pat Hiles gave me a compliment noting that I participated vigorously and asked a lot of questions. Legal has provided positive feedback on my work product as well noting that I am proactive, approachable and always reach out to move cases. I am always coachable and reached out to M Skibinsky a few times to discuss cases for her opinion in contrast to mine; surprisingly TM concluded that this was me deferring a decision to her and not taking ownership of my cases. This was new as from the inception of this team; managers encouraged open dialogue and teamwork on difficult cases because sometime we the case managers may overlook something. TM Skibinsky started sending me several emails noting that based on my job title I should know what to do and she was concerned with my inquires. All in all, being coachable and seeking guidance translated to incompetence with TM Skibinsky. On 5/19/15, I responded to her email on my development plan stating the same thing I stated to Deb Holt 2014; I requested to have access to volunteer in upcoming office task which would give me the opportunity to problem-solve. I requested to take leadership classes to improve my leadership skills. I declared I want to take on leadership roles and invest in coachable environment and classes on the same. On 6/10/15, recognized by Edie McGinn for the Mid-Atlantic BI & Elmsford NI Success stories. She noted "Latoya recognized that our permanency expert's rating was higher than anticipated. Since this negatively impacted the settlement value, Latoya incorporated that weakness into her evaluation and settlement range. During negotiations, she argued the strengths of the claim to mitigate the overall exposure, and resolve the claim for her second planned value within her range. A great example of Evaluation Expertise!" Based on all I have stated above which was omitted from review, I was not struggling with my work.

On 1/27/15, I was told that this performance evaluation was done based on my One-on-One meetings held on 3/3/15 (held by TM Holt with brief discussion on communication coaching for co-workers and request that I only put new information in summary not the CST information); 3/24/15 ( Held by TM Holt with TM Skibinsky sitting in; discussion on posting MMI date was not enough(new information)and need for case facts to be posted also, QA scored discussed/disagreement with NI rating by TM Holt and lastly time worked remotely a month prior now needed to listed as FTO); 4/24/15( 1st meeting with TM Skibinsky as a new TM for claim, she noted she would spot check 3 cases a month, she noted that emails sent to me were addressed right away, swing report cases were address the same day given and LS for April QA); 6/2/15 (TM Skibinsky noted that I am copy/pasting case facts from prior case owners on the same case was against the company copy and paste protocol, voluntary coaching was suggested as she noted she wants me to be more proactive and listed 20 cases to review in 30 days, I noted that I was being singled out but welcome the training, 20 out of 317 cases was not a bad ratio and my disposition was within the range of team), and 7/2/15 (by this time, I was placed on verbal warning 6/10/15 and written warning 6/26/15 along with a first and final internet usage violation write-up, things that I was told to not worry about like gray inbox and balance of 20 cases were highlighted in this meeting by TM Skibinsky). Since 6/10/15 through my disability as of 7/10/15, was the only period I was subjected to any coaching sessions and placed on any verbal/written warning in 2015.

This all stemmed from the allegations of me copy/pasting the case facts (mechanism of injury/Age/treatment) from the prior case manager on the same case on the same claimant. TM noted I violated the company Copy/paste policy listed in the service principle. No one in the office ever heard of such a principle and I never located the same cause it never existed. This then snowballed into me not working proactively enough and resulted in the verbal and written warning. The coaching sessions were flawed and premediated. I was treated with no integrity or professional standard by TM Skibinsky. In all my years with this company, I never thought I would encounter such treatment.

Customer Experience: I take pride in providing outstanding customer service and engagement on each case. In all my files, I post all the email communications between myself and the insured. This was what led to me getting a compliment from an insured who noted "nice work". TM disregarded this as a compliment. I never submitted any more compliments as I perceived it would not be valued by TM Skibinsky. I do not recall any customer/broker complaints in 2015. Participated in claims review and provided outstanding service.

Efficiency/Scale: Employees are given the right to manage their inbox on their preference; no defined guideline on the management of an employee's inbox. In 2014, I took the advice of prior TM Holt regarding the management of my inbox using one activity the Resolution Strategy. As of 6/10/15, TM Skibinsky ordered that I managed my inbox differently as she continues to see the same activity being moved. At that point we no longer had to post an action plan every 90 days. TM stipulated that as of 6/10/15, I was not allowed to move any activity in my inbox until it had an action plan posted with the last 90 days, if not I had to complete one prior to moving. I was not given any grace period to spread out activities and requested the same due to the accumulation of potential gray. She noted the gray was not a problem but she used this negatively against me as noted in the 7/2/15 One-on-One. I had a great working relationship with legal; they message, call or email me and I always push cases to disposition. J. Dryer (legal) noted "I find that you are approachable and we are always able to work together to resolve our claims". J. Puzzo (legal) noted "Excellent, I hear from all the attorneys that you call them all the time to move cases...you do good job the entire time I have worked here". T. Miller (legal) noted "I consider you to be proactive". How could the counsel that I work with think my work is proactive and my manager of less than 3 months then conclude that I am struggling?

Employee Engagement: CM Sylvester was FTO. I received a call on her case and took ownership of task in her absence. I cancelled/rescheduled a permanency appt. In addition, I formulated/sent out letter on the same. There was several other task I have helped my co-workers with such as claim review, presenting a claim, offering to drop mails off when I am headed to do the same or dump papers for shredding. I served as a go-to person for New Jersey for J. Zakalik when she transitioned to a New Jersey caseload. I received a compliment from HR Glenn Daly on 1/29/15. He noted "Please note that Latoya did a great job in this settlement". Pat Hiles reported that I participated vigorously and asked a lot of questions. I was absent from the office as of 7/10/15, prior to the huddle roll-out; prior huddle were in actual team and I was always contributing. The only task the team collaborated on last year was really team member's birthdays and I also contributed also. I am unaware of being unresponsive to any pertinent team issues and remain a team player.

Loss Cost: There was never a report that showed my rank on addendum cost/no show cost due to lack of notification to the attorney of claimant or records delay. Historically for over 5 years, the same day I set up a perm exam is the same date the appointment letter is sent out. This can be proven in any file of mind as the appointment letter is in correspondence history. I usually set an activity to send out the records to the doctor/attorney one month prior to appt date. TM noted that One Focus principles are not consistently evident in my case handling. It was stipulated that cases priced prior to One Focus did not have to be re-priced; TM alerted me on some of these cases and demanded that they be re-priced. I complied though it is contrary to the current guideline. TM noted that I do not meet due dates for specified activities assigned by TM. What activities? I do not recall being ever told I was late on any activity in 2015. Please see One-on-One meeting for 4/24/15 in which she noted the activity sent to me for a Swing report was completed immediately. From 1/2015 to 6/2016, I had an YTD score for closure/ settlement of 94; in team Groves: 47, Everson: 98, Sylvester: 112, Leon: 119 and Lucia: 122. I held highest caseload of the whole team since 1/2015. My caseload from 2014 had majority SIF cases which limits/eliminates direct settlement capabilities. 54 notes team report several teammates with higher ranks than me. In every area listed I am below expectation per TM and it's unsubstantiated. This is an inaccurate assessment of my work/contribution to Liberty.