CONFIDENTIAL

D-39

**Message**

**From:** Polk, Michael [/O=LIBERTYMUTUAL/OU=HOMEOFFICE/CN=RECIPIENTS/CN=N0198293]
**Sent:** 1/26/2016 12:18:28 AM
**To:** Thompson, Latoya [/O=LIBERTYMUTUAL/OU=HomeOffice/cn=Recipients/cn=N0170469]
**CC:** Holliss, Kerryanne [/O=LIBERTYMUTUAL/OU=HomeOffice/cn=Recipients/cn=N0109902]; Karlen, Jenese 0354HR [/O=LIBERTYMUTUAL/OU=HomeOffice/cn=Recipients/cn=N0080748]
**Subject:** RE: Formal Complaint - Latoya Thompson

Hi Latoya,

Thank you for the email.

I will initiate the process to conduct an investigation into your concerns. I will contact you shortly regarding the next steps.

Thanks again,

**MICHAEL POLK | HUMAN RESOURCES MANAGER, SPHR**
Liberty Mutual Insurance
Talent and Enterprise Services
(O) 972.470.8774 (M) 469.525.9326
Michael.polk@libertymutual.com
Mailing address: 2400 Lakeside Blvd, Suite 400 Richardson, TX 75082

If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please notify me via return e-mail or via telephone [972-470-8774] and please permanently delete the original and any copy of any e-mail and any printout thereof. Thank you.

---

**From:** Thompson, Latoya
**Sent:** Monday, January 25, 2016 2:34 PM
**To:** Karlen, Jenese 0354HR <Jenese.Karlen@LibertyMutual.com>; Holliss, Kerryanne <Kerryanne.Holliss@LibertyMutual.com>
**Cc:** Polk, Michael <Michael.Polk@LibertyMutual.com>
**Subject:** Formal Complaint - Latoya Thompson

Formal Complaint:

I am writing to inform you that I am being discriminated against, harassed and subjected to a hostile work environment on the basis of my race. I am continuously being singled out and differentially treated by my manager Michelle Skibinsky.

Timeline of Events:

1. On 1/22/2016, I was called into a meeting at 4:45pm by my manager Michelle Skibinsky. My scheduled departure time was 4:15 pm from work. She noted the meeting was going to be really quick. I proceeded to the conference room for the impromptu meeting. She started the meeting demanding that I remove my cell phone and place it at my desk if I had it. She noted that she suspects that I am recording the meetings with my phone. She noted that moving forward I am not allowed to carry my phone to any meeting. I stated that everyone carry their phones and reference employee Jenna and teammate Armando Lucia. HR referenced that

CONFIDENTIAL

Jenna's phone is a company phone. Ms. Skibinsky noted that Armando has a personal issue and I need to report to her if I am expecting a personal call which requires me carrying my cell phone with me. She accused me of excessively being on my cell phone lately. She also stated that it was reported to her that I was on my phone during a meeting. I declared that this is false information. She noted that every time she comes to speak to me at my desk I am on my phone. I asked her if I was on my phone when she just walked over to my desk, she declared no.

She asked what my intentions were as she doesn't understand what is going on. She stated that she noticed excessive use of the printer by me. She referenced seeing a stack of emails that I printed from herself and prior manager Debra Holt. Skibinsky requested that I provide an explanation as to why I needed to print these emails. I was told we are a paperless company and there was no business need to print my email and asked if I was seeking an attorney. I noted that whenever I printed any document I go straight to the printer and many times wait for the printer to warm up and print them; therefore it was alarming that she can reference some of the content of my emails. I asked what is the quota for my daily printing. She noted there was none. I explained that I am constantly being scrutinized for doing or not doing something and there is no defined guideline for the alleged offense. I stated that I am currently on performance probation and is unsure how this meeting correlates to that and my main focus continues to be perfecting my workload. Skibinsky noted that I should not be reaching out to my peers for any coaching. Skibinsky noted that she is the only one that should be coaching.

2. On 1/22/2016, during the morning huddle with the team Skibinsky noted that she would take a picture of the board. Previously, she announced that everyone should take a picture of the board to carry metrics to their new teams effective 1/25/2016. At 9:40 am, I walked to board and took a picture and made copy of a draft. While placing the draft back on board Armando Lucia whose desk is beside the board observed me putting the draft back up on the board. Skibinsky arrived to the board at 9:45 am for the huddle meeting. Cyndy Everson took her picture of the board with her cellphone during the meeting. During the impromptu meeting that day, I was told by Skibinsky that she saw me with her own two eyes remove the graph and copy it. My teammate Armando was the only person to observe this; therefore, it leads me to believe that reported this to my manager. Early that morning, I presented my teammate Tony with a copy of my case pricing for critical feedback after manager emailed me saying it was completed all wrong. He collected the paper and said okay. Later in the day I followed-up with him and he suggested that I seek help from Skibinsky. I walked away from my cube to drop off something and when I returned Skibinsky and my teammate Tracey Sylvester were talking about me. It was said why don't I go home.

3. On 1/21/2016, I was called into a training for my inbox management with HR and my manager. Skibinsky noted that she was assisting me with clearing clutter in my inbox. This is never a training anyone in the organization is subjected to as it is covered during new hire training and solely based on an individual's preference. At the end of meeting, I was presented with a printout of roughly 21 cases that she identified as needed to be settled out of my caseload.

    A) Every case manager Inbox is handled at their personal discretion and no standardize rule regarding the Inbox management is in place. On 6/11/2015, my manager informed me that I no longer had control of my Inbox regarding moving any activity like the rest of my team. This resulted in a buildup of overdue activities especially because I was also informed every case now needed an action plan (summary) every 90 days. This was contrary to the company policy in place from 2014 in which we posted action plans (summary) only when the case facts changes.

LIB_ESI_0985

CONFIDENTIAL

B) Late evening, I sent an email requesting to work remotely on 1/21/2016 due to flare up of flu. Skibinsky responded that I could not and would have to take a vacation day instead. Prior to my request Skibinsky frequently stated that if you are sick work remotely as to prevent the team from being sick. When I became sick and requested the privilege that the entire team was privy to; I was told no because I was on written warning. This is puzzling as the flexible work arrangement is a quarterly commitment and working from home 1 day was not the same thing. I emailed HR asking for a full disclosure of the Do's and Don'ts of my performance probation and was basically told there was no standard policy in place and rules are made as I ask questions.

4. On 1/20/2016, I met with Skibinsky and HR Karlen. Skibinsky noted that she saw no improvement in my work and presented a paper with 9- 10 cases in which she noted I did "fluff" work. I explained that I did the activity required that day in my inbox and whatever else is warranted. I explained that since 1/8/2016 when I was accused of moving due dates in my entire inbox I never touched any activity due to fear of the repeat allegation. I stated for the past week I worked on 5 times the amount of cases that she pinpointed. I asked if she saw anything positive or that I did right. She noted "NO". She declared that working from my inbox was the only way to work in the company. I asked if this was written anywhere and she exploded. She stated that I was very disrespectful. She mentioned that doing a summary for resolution strategy a month early was non-value work. I stated that if she is requiring me to post the new initial resolution strategy as I am assigned the cases which is roughly 2 weeks early (due 14 days after assignment), why is posting an action plan 1 month early non-value. She accused me of twisting things around and declared she is not arguing. She called me a liar and closed saying we will sit and go over my inbox together to clear clutter. Later in the day I heard that several co-workers heard Skibinsky yelling at me during the meeting.

5. On 1/19/2016, Attorney Fiorello called on 4 cases that was sent to me on 1/18/2016 from Cyndy Everson. He noted cases have been at a standstill and case manager not responsive. I dropped everything and reviewed the cases as they were listed the next day. I went to prior case manager Cyndy to discuss case and make sure I didn't overlook anything. She deferred me back to Skibinsky for her opinion. I walked to Skibinsky desk and explain the whole case and asked for her opinion on medical bill payment. She said I needed to review and price the cases before she could supply me with feedback. I explained that settlement is already done and the issue was medical bills. She accused me of not reading the file and just agreeing with defense counsel. I reiterated my position and the basis for the same. She concluded that I needed to take ownership of my work and not try to have her make decisions. Skibinsky provides no guidance to me as a manager. This is the second scenario like this where I sought her managerial opinion and was told I need to take ownership of my case. However, she willing engages in discussions with all my team members and provide them guidance on their cases.

6. On 1/13/2016, meeting started out with HR Karlen. She stated that during the office meeting the day before while manager Lauren Sanseverino was being recognized by her team; I was making faces. This was said to be witnessed by my manager's manager Kerryanne Holliss. I was accused of making faces which insinuated that my manager was not a good manager like Sanservino. Also allegedly there were several complaints by co-workers to my manager about me making faces at them (rolling my eyes, negative looks ). HR noted I am to treat my manager with dignity and respect and my behavior was not professional. This was a major shock to me. I noted that my manager Skibinsky was right beside me during this meeting and my prior manager Debra Holt stood beside her. I apologized for this error as I never made any faces to anyone and the whole office was cheering Sanseverino on; therefore how am I the only one deemed disrespectful celebrating someone along with the office. I declared in all my years with

LIB_ESI_0986

CONFIDENTIAL

the company I maintained professionalism and ask what benefit it served me to make faces at co-workers. I declared that is not a characteristic of me personally or professionally and am puzzled that hearsay can impact me in such a manner. In closing, I was told to no longer respond to my manager's email as it is argumentative. I was told I should not send any re-cap of our meeting; HR will send re-cap. I asked if my statements will be referenced and was told yes. It was stated that my body language during huddle was negatively impacting the team because I stood at end. I declared I was actively fighting a respiratory infection and did not want to cough on teammates. She noted my performance was still not meeting expectation. Again I asked for a clear outline as to what is her desired expectation. She responded saying do whatever is necessary to bring the cases up to date. My teammates get to work their files per their discretion while my work is dissected and labeled not enough. She suggested that I price 2 cases a day. I declared I was not comfortable with the same as I not long returned from leave and was getting acclimated. I stated 1 per day was more realistic for me as the team is projecting for that week 2/3 pricing per week. She denied this. I reminded her it was written on the blackboard. Historically, our team has a closure quota and a settlement quota which is unrealistic so we really met the goal. Have a daily settlement goal is new to me upon my return. It was also stated that I left the office an hour early yesterday without alerting my manager. I stated that I verbally discussed and was given approval the week prior. I stated that prior to leaving I alerted the team, I left for a doctor's appointment. My manager denied this conversation ever took place.

7. On 1/12/2016, I received an email from Skibinsky in response to the substantiation of my daily work for 1/11/16. She noted that my email was non-value and I should use my time being more productive. New hire Lamar Baskerville started with the company on 1/11/16 and was given his ergonomic assessment. I haven't had an assessment yet since I started back work 1/04/16. Both teammates Lori Groves (part-time/no AWS) and Tracey Sylvester worked remotely due to flu.

8. On 1/11/2016, I got an email response from Skibinsky on my recaps of my work on the 1st 20 cases and meeting on 1/8/16. She noted that the email was non-value and she doesn't need a recap. She was bullying me to no longer disclose the content of our meetings in the presence of HR. I did not reply in an attempt to avoid appearing argumentative. During the morning huddle teammate Tracey Sylvester called in telephonically as she was sick with a cold. Skibinsky stated that if anyone was sick, they should work from home to prevent getting teammate sick.

9. On 1/8/2016, I walked to the morning huddle set for 9:45 am. I walked passed my manager speaking to teammate Joan Pennino. I was feeling rather ill so instead of standing while waiting, I decided to sit on a vacant chair. 2 mins later, Skibinsky walked by and screamed "Get up there is no sitting in the chair, get up". I stood up and she stated no one was allowed to sit in chair during these meeting unless they had a doctor's note. However, every meeting teammate Cyndy Everson is seated. Skibinsky mentioned that Cyndy is allowed to sit because she has knee problems and is obese. Later in the day during an impromptu meeting with HR; Skibinsky stated that I had a negative look on my face after she told me to get off chair. I disagreed and noted I complied with her directive. I explained I only sat because the meeting was delayed and I was not feeling well. I stated I was unsure why she interpreted my face in that manner as I did not have any negative feelings at the time. Fact is Cyndy Everson sits at every meeting, she had a knee replacements done a couple years prior and I had a subsequent Achilles repair surgery and sometimes sat during team meeting pending swelling or discomfort prior to Skibinsky being my manager. During this meeting I was accused of moving activities in my inbox. Skibinsky noted that this was the same trend she noticed before which resulted in my performance probation. I declared I returned to work 1/04/16 and got system access by the evening of 1/6/2016. I noted

LIB_ESI_0987

that was when 20 cases were sent to me and it was not until 1/7/2016 I began working the files. Skibinsky noted she did not see what work I did since I returned to work. I stated I was unaware of her accusation of pushing out due dates as I haven changes any activities. After the meeting I researched her complaint of my pushing my dates out and realized that the date that case is re-assigned to me, all activities associated with the claim shows that same day as an update systematically. I printed it out and showed her at her desk. She agreed partially.

10. On 1/7/2016, I was informed by a co-worker that while I was on disability, TM Skibinsky had total access to my email and came to her and referenced an email I previously sent to the co-worker asking about the copy and paste policy. Skibinsky told the co-worker she gave me the wrong information by saying that "she copy and paste all the time on her files". My co-worker warned me and seemed intimidated to engage with me like we once did. All in all, my manager was snooping in my emails and discussing me with co-workers. My teammate are very cold towards me. I say good morning and good night and they don't answer. I assume Skibinsky discuss me with them if she was comfortable to discuss me outside the team. This has created a very hostile work environment for me.

11. I had the highest caseload of 317 when my manager placed me on verbal then written warning. She identified 25 cases on 6/2/15 and said she just wanted me to review and see what I could do differently by the next 30 days. Upon review files were aggressively managed but manager desired it to have been quicker than I completed. My disposition was within range of my team, there was no quantitative evidence of my performance being below my teammates.

12. I was accused violating the company copy and paste policy by copying the case facts (age/mechanism of injury/diagnoses/discharge date) on the same case transferred to me by other case managers. The action plan template does require a summary of case facts, it is optional.

13. On 6/26/2015, I was presented with a 30 day written warning and a first and final warning for violating the company internet policy. This internet report was never utilized on anyone else in my office prior. My manager requested this report from March to June. I asked if this was customary and HR noted yes when a manager want to account for lack of productivity. I requested a copy of the report and was told I could not obtain the same because it was with the fraud unit.

14. On 6/2/2015, I had my monthly meeting and was singled out for a coaching program. I was informed it would start on 6/11/2015. On the 1st day of "coaching" I was informed by HR that I was now on verbal warning. I asked what changed in a week but was not given an answer. The next 3 coaching sessions, I was consistently called a liar and spoken to in a condescending manner by my manager and HR. Meetings seemed stage and made to appear that I was not receptive to coaching. My manager picked old cases and asked my thoughts on my work. When I provided my feedback, Skibinsky would have emotional outburst resulting in her saying this was a waste of her time.

15. I filed a complaint with Jenese Karlen on discrimination and bullying the end of March 2015.

Your assistance with this matter is greatly appreciated.

Thanks,

LIB_ESI_0988

CONFIDENTIAL

Latoya Thompson, MBA | Technical Claims Specialist I - WC

Liberty Mutual Insurance| Commercial Insurance Claims | Field Operations
Tel. 800.900.4875 x21183 | Fax. 603.334.8397 | SDN. 8.448.21183 or 7321183

Please let my manager know how I am doing!  Email Michelle.Skibinsky@Libertymutual.com

Thompson v. LM