NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LATOYA THOMPSON,

    *Plaintiff*,

v.

LIBERTY MUTUAL INSURANCE,

    *Defendant*.

Civil Action No. 18-6092

OPINION

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by way of Defendant Liberty Mutual Insurance's ("Defendant" or "Liberty Mutual") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, ECF No. 52. Plaintiff Latoya Thompson ("Plaintiff") opposes the Motion. ECF No. 54. For the reasons explained below, the Motion is **GRANTED**.

### I. FACTUAL BACKGROUND[1]

This matter arises out of Liberty Mutual's decision to terminate Plaintiff's employment in July 2016. Pl. SOMF ¶ 72. Plaintiff alleges that her termination was the result of discrimination and retaliation related to her pregnancy. Id. ¶ 51; see generally, Compl., ECF No. 1.1.

Plaintiff began working at Liberty Mutual on April 7, 2008. Pl. SOMF ¶ 2. Liberty Mutual hired Plaintiff as an Associate Claims Specialist in its Roseland office. Id. ¶ 9. As an Associate Claims Specialist, Plaintiff was responsible for managing workers' compensation cases after the claims were reported to Liberty Mutual. Id. ¶ 10.

---

[1] Unless otherwise indicated, the Court draws the following facts from Defendant's Statement of Undisputed Material Facts ("Def. SOMF"), ECF No. 52.8, and Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("Pl. SOMF"), ECF No. 54.2.

1

Beginning in 2013, Liberty Mutual had begun observing and recording a notable deterioration in Plaintiff's job performance.[2] In 2013, Plaintiff's supervisor completed and issued an Objective Setting and Performance Evaluation Form for that year. Id. ¶ 12. This form noted that Plaintiff's "technical performance was inconsistent" and that she "sometimes struggled with timeliness," which negatively impacted her overall performance. Certification of Jennifer Rygiel-Boyd ("Rygiel-Boyd Cert."), Ex. 3 at D-0056, ECF No. 52.3.

In 2014, Plaintiff's then-manager Debra Holt ("Holt") emailed Human Resources requesting to speak regarding a "new trend" with Plaintiff. Pl. RSOMF ¶ 14. Holt then had discussions regarding Plaintiff's performance problems with Michael Squeo ("Squeo"), the Regional Claims Manager. Squeo noted the following issues in a July 24, 2014 email: 136 of the 232 claims assigned to Plaintiff were inactive, "some of the new assignments were not reviewed within the 14 day requirement," twenty cases had to be reassigned, and untouched mail was found on Plaintiff's desk. Id. ¶ 18. Following this, Holt met with Plaintiff to discuss her performance and issued a first written warning to Plaintiff. Id. ¶¶ 19-20. As a part of the First Warning, Plaintiff was instructed to attend weekly sessions with Holt to help improve her performance, which included coaching on proper email communications with her coworkers. Id. ¶¶ 21-22.

On September 11, 2014, Holt emailed Squeo to report on Plaintiff's performance issues and the progress of her weekly sessions. Holt stated that Plaintiff was "not getting worse," but was "not where she should be." Id. ¶ 23. Holt further noted that she felt Plaintiff was "having a poor attitude towards everything" and was "not being a team player." Rygiel-Boyd Cert., Ex. 7 at

---

[2] Plaintiff does not dispute the existence of this disciplinary record or authenticity of the statements made therein. Rather, in her Response to Defendant's Statement of Undisputed Material Facts, Plaintiff in several instances argues merely that Liberty Mutual's actions were unjustified or subjectively incorrect. See, e.g., Pl. RSOMF ¶ 19 ("Agree that Holt issued a Written Warning. Disagree it was justified."). In these instances, Plaintiff either does not cite to evidence in support of her position or only cites to her own speculative deposition testimony. See id. (citing to her own deposition testimony providing an explanation for why her case work was backed up).

LIB_ESI_0198, ECF No. 52.3. Consequently, Squeo agreed to extend the First Warning for another 30-day period and Plaintiff continued her weekly coaching. Id.; Pl. RSOMF ¶¶ 24-25.

On September 14, 2014, Plaintiff submitted a complaint to Human Resources alleging that Holt was discriminating against her "because of her race as an African American, additionally coupled with my limitations on disability." Rygiel-Boyd Cert., Ex. 12, ECF No. 52.4.[3] Two days later, Plaintiff sent a letter to Human Resources and Holt containing her "rebuttal" to the warnings she had received. Pl. Ex. F, ECF No. 54.8. In this rebuttal, Plaintiff did not raise concerns of discrimination or note anything about pregnancy. Rather, she argued that these perceived performance issues were unwarranted and were the result of an unfair backlog that accumulated following her return from disability leave. Id. at LIB_ESI_0223. A month later, Plaintiff was effectively removed from written warning status.

Liberty Mutual continued to observe concerns regarding Plaintiff's performance. Plaintiff's Objective Setting and Performance Evaluation Form for 2014 rated her overall performance rating was a five on a scale of one to fifteen—with a six for "performance" and a negative one for "behavior." Rygiel-Boyd Cert., Ex. 11, ECF No. 52.3. Her overall score declined in 2015 Evaluation to a four due to a one-point decline in her performance rating. Rygiel-Boyd Cert., Ex. 18, ECF No. 52.4. In June 2015, Plaintiff's new direct supervisor, Michelle Skibinsky ("Skibinsky"), issued a verbal warning to Plaintiff related to the quality of her claim handling and the management of her inbox. Pl. RSOMF ¶ 37. Skibinsky issued another written warning later that month. Id. ¶ 38. Plaintiff also received a warning for violating the company's internet usage policy and admits to having used the internet for non-business purposes. Id. ¶¶ 38-39. In January

---

[3] Human Resources investigated this complaint. Def. SOMF ¶ 34. Upon completing its investigation, Plaintiff was advised that they were unable to substantiate her allegations. Id. ¶ 35.

2016, Skibinsky met with Plaintiff to discuss her performance issues and policy violations, and Human Resources subsequently sent a follow-up email related to those discussions. Id. ¶¶ 42-44.

On January 25, 2016, Plaintiff submitted a second complaint to Human Resources alleging that Skibinsky harassed and discriminated against her because or her race. Rygiel-Boyd Cert., Ex. 19, ECF No. 52.4. The complaint detailed confrontations Plaintiff has with Skibinsky, but it did not mention or reference her pregnancy. See Pl. Ex. K at LIB_ESI_0984-89, ECF No. 54.13. Human Resources responded that they would investigate her concerns. Id. Human Resources met with Plaintiff in May 2016 to inform her that they investigated the matter and could not substantiate her allegations. Pl. RSOMF ¶ 50.[4]

On May 13, 2016, Plaintiff sent an email to Skibinsky and Human Resources to notify them that she was pregnant. Id. ¶ 51. This is the first instance that Plaintiff notified Liberty Mutual of her pregnancy.[5] Id. ¶ 52. Skibinsky responded offering her congratulations and wishing her a "happy and healthy" pregnancy. Id. ¶ 53.

About two weeks later, Skibinsky issued another written warning to Plaintiff. Id. ¶ 54. Plaintiff admits that she does not know whether Skibinsky issued this warning because she was pregnant. Id. ¶ 57; Rygiel-Boyd Cert., Ex. 1, Transcript of Deposition of Latoya Thompson,

---

[4] Although Plaintiff recounts complaints she made during the early part of her employment based on alleged racial and non-pregnancy related disability discrimination, there are no claims for racial or non-pregnancy related disability discrimination this case. Towards the end of discovery, Plaintiff moved to amend her complaint to add a claim for racial discrimination in violation of NJLAD and interference with rights under the Family and Medical Leave Act. Because that motion was made seven months after the deadline for amendments to pleadings and Plaintiff failed to demonstrate "good cause" under Rule 16, the Magistrate Judge denied the motion. See Order Denying Motion for Leave to Amend, ECF No. 29. Plaintiff did not appeal that decision to the District Court.

[5] In her Response to this fact, Plaintiff says that she "agree[s]" this is true but argues this was just the first "official" notification. Pl. RSOMF ¶ 52. She disputes that her supervisors were not previously aware of her pregnancy but cites to no record evidence in support. The Court cannot credit this assertion in the absence of evidence in support. See Acumed LLC v. Advanced Surgical Servs., 561 F.3d 199, 228 (3d Cir.2009) ("[S]peculation and conjecture may not defeat a motion for summary judgment.").

408:1-11, ECF No. 52.2 ("Pl. Dep. Tr."). Plaintiff further admitted that Skibinsky did not ever say anything derogatory to her regarding her pregnancy. Pl. RSOMF ¶ 59; Pl. Dep. Tr. 408:12-17.

Following the issuance of this warning, Plaintiff was placed on probation beginning on June 27, 2016. Pl. RSOMF ¶ 60. This probationary period was to run for 30 days until July 27. Id. ¶¶ 60, 62. Plaintiff was informed that once her probationary period ended, Liberty Mutual would make a decision regarding her employment and she could be terminated if her job performance did not improve during this period. Id. ¶¶ 63, 64. On July 15, Plaintiff notified Human Resources that her maternity leave would begin on August 8. Id. ¶ 65.

On July 27, after Plaintiff's probationary period expired, Skibinsky recommended that Plaintiff's employment be terminated due to her continued performance issues. Id. ¶ 69. An Employee Relations Specialist supported the termination decision and requested approval of the decision from Mary Ellen DeBellis ("DeBellis"), a vice president at Liberty Mutual. Id. ¶¶ 60, 63. In considering whether termination of Plaintiff was appropriate, DeBellis reviewed Plaintiff's performance reviews and disciplinary notes but not her entire personnel file. Id. ¶ 71. DeBellis approved Plaintiff's termination the same day that she received the request. Id. ¶ 72. DeBellis testified that she was not aware of Plaintiff's pregnancy at this time. Id.

Also on July 27, Plaintiff's doctor provided her a medical note placing her on maternity leave earlier than originally planned, to be effective the following day on July 28. On July 28, Plaintiff showed up to work and agreed to meet with Skibinsky in a conference room. Id. ¶¶ 73-75. However, Plaintiff got cramps and left the office abruptly. As a result, Plaintiff never met with Skibinsky and never gave her the new medical note. Id. ¶¶ 66, 77. Liberty Mutual tried to contact Plaintiff the following day via telephone but was unsuccessful. Id. ¶¶ 79-82.

On August 1, 2016, Liberty Mutual sent a termination letter to Plaintiff at her home address. However, Plaintiff did not receive formal notification of her termination until on or about August 8, 2017.  Id. ¶¶ 83-85.

**II. PROCEDURAL HISTORY**

On February 6, 2018, Plaintiff initiated this action in the Superior Court of New Jersey, Hudson County.  See Compl.  The Complaint alleges three causes of action against Defendant: (1) disability discrimination associated with her pregnancy in violation of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-12, 10:5-4.1 ("NJLAD"); (2) gender and/or pregnancy discrimination in violation of the NJLAD; and (3) retaliation for her complaints of "disability," "gender," or "pregnancy" discrimination in violation of NJLAD.  Id.

On April 11, 2018, Defendant removed this diversity action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  Notice of Removal, ECF No. 1.[6]  This Motion followed.

**III. LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(c), the Court should grant summary judgment when there is no genuine issue as to any material fact "that would permit a reasonable jury to find for the nonmoving party," Boyle v. Cnty. of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998) (citation omitted), and "the moving party is entitled to judgment as a matter of law," Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, the Court does not "weigh the evidence to determine the truth of the matter," but rather assesses "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-52 (1986).

---

[6] Plaintiff is a citizen of the state of New Jersey and Defendant is a citizen of the state of Massachusetts.  Notice of Removal ¶¶ 12-13.

The Court construes all facts and inferences in the light most favorable to the non-moving party, see Boyle, 139 F.3d at 393, and the moving party bears the initial burden of demonstrating that no genuine issue of material fact remains, see Celotex Corp., 477 U.S. at 322-23. If the moving party meets its burden, the non-moving party must present evidence demonstrating a genuine issue of material fact for trial. See Anderson, 477 U.S. at 248-49. A non-moving party's "[u]nsupported allegations, subjective beliefs, or argument[s]" cannot alone overcome a properly supported summary judgment motion. V.C. by Costello v. Target Corp., 2020 WL 1864611, at *4 (D.N.J. Apr. 14, 2020). If the non-moving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" summary judgment is warranted because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 59 n.5 (3d Cir. 1992) (internal quotation marks and citation omitted).

## IV. ANALYSIS

Plaintiff's Complaint alleges disability discrimination "associated with her pregnancy" (Count One) gender and/or pregnancy discrimination (Count Two) and retaliation for complaints about disability/gender discrimination (Count Three), all in violation of the NJLAD. All counts fail.

### A. Discrimination Claims

Plaintiff brings two counts alleging discrimination related to her pregnancy in violation of the NJLAD.[7] Analysis of a claim under the NJLAD applies the familiar McDonnell-Douglas

---

[7] Plaintiff's first count alleges disability discrimination related to her pregnancy. However, "[p]regnancy, alone does not constitute disability." Hetzel v. Spencer, No. 3:15-7271, 2018 WL 6046623, at *6 (D.N.J. Nov. 19, 2018); Larsen v. Twp. of Branchburg, No. A-0190-05T2, 2007 WL 135706, at *4 (N.J. Super. Ct. App. Div. Jan. 22, 2007) (explaining under the NJLAD a "normal pregnancy, absent complications, is not a physical disability"). Plaintiff has

7

burden-shifting framework. See Teubert v. SRA Int'l, Inc., 192 F. Supp. 3d 569, 574 (D.N.J. 2016) (citing Schurr v. Resorts Intern. Hotel, Inc., 196 F.3d 486, 498 (3d Cir. 1999)). Under this framework, Plaintiff must first establish a prima facie case of pregnancy discrimination by showing that "(1) she was pregnant and the defendant knew that fact, (2) she was qualified for her job, (3) she suffered an adverse employment decision, and (4) there was some nexus between her pregnancy and the adverse employment action." Rymas v. Princeton Healthcare Sys. Holding, Inc., No. 15-8188, 2017 WL 4858123, at *6 (D.N.J. Oct. 27, 2017) (citing Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 365 (3d Cir. 2008)). Next, the burden shifts to Defendant "to articulate some legitimate, nondiscriminatory reason" for Plaintiff's termination. Teubert, 192 F. Supp. 3d at 574. If Defendant articulates such a reason, the burden shifts back to Plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. (citing Jones v. School Dist. of Phila., 198 F.3d 403, 410 (3d Cir.1999)).

Here, the Court concludes that Plaintiff has failed to provide any evidence establishing the causality requirement of a prima facie case. Moreover, even if Plaintiff were able to establish a prima facie case, Plaintiff has further failed to provide any evidence that demonstrates Defendant's legitimate, nondiscriminatory reason for her firing—her consistent job performance issues—is just a pretext for pregnancy discrimination.

---

not pled, argued, or presented facts establishing her specific pregnancy entailed complications that rendered her temporarily disabled. On that basis alone, Count One is dismissed. And even if the Court did consider it, it fails for the reasons discussed infra. Count Two alleges "gender and/or pregnancy discrimination." Because Plaintiff does not raise factual issues relating to gender discrimination independent of pregnancy discrimination, the Court will consider Count Two as one asserting pregnancy discrimination.

8

### i. Causal Connection

To succeed on her discrimination claims, Plaintiff must show that her termination was in some way caused by her pregnancy.[8] Plaintiff could meet this burden by introducing "evidence of circumstances that give rise to an inference of discrimination in light of her ultimate termination." Tourtellotte v. Eli Lilly & Co., 636 F. App'x 831, 843 (3d Cir. 2016). An inference of discrimination could be demonstrated in a variety of ways. "Temporal proximity," i.e., timing that is unusually suggestive, between Plaintiff's announcement of her pregnancy and her termination may create an inference of discrimination. Santosuosso v. NovaCare Rehab., 462 F. Supp. 2d 590, 599 (D.N.J. 2006). Additionally, evidence that Defendant treated Plaintiff less favorably than similarly situated employees who were not pregnant could create an inference of discrimination. See Hetzel, 2018 WL 6046623, at *5. Here, Plaintiff has not pointed to any evidence that could establish this necessary inference.

As an initial matter, there is no evidence of temporal proximity in the instant case that gives rise to an inference of causation. Plaintiff was terminated two-and-a-half months after she notified Liberty Mutual of her pregnancy. The lapse of two-and-half months by itself is not unusually suggestive of discrimination. See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) (finding "a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment"); see

---

[8] Defendant does not challenge that Plaintiff was pregnant and it knew about her pregnancy; that she was qualified for her job; or that she suffered an adverse employment decision (termination). It bears noting that Plaintiff's termination is the only event in the record that could satisfy the "adverse employment action" requirement of a prima facie case of discrimination or retaliation. An adverse employment action must be one "to have either impacted on the employee's compensation or rank or be virtually equivalent to discharge." Smith v. Twp. of E. Greenwich, 519 F. Supp. 2d 493, 511 (D.N.J. 2007). The warnings Plaintiff received cannot constitute an adverse employment action under the NJLAD. See Wilson v. M&M Mgmt. Co., 2019 WL 2642648, *5 (D.N.J. June 27, 2019) (describing "both verbal and written warnings" as "legally insufficient to support" a claim of discrimination). Similarly, placing Plaintiff on probation is not an adverse employment action as it was unaccompanied by "any significant impact on rank, pay or benefits." Marracco v. Kuder, No. 8-713, 2008 WL 4192064, at *8 (D.N.J. Sept. 9, 2008).

also Rinsler v. Sony Pictures Ent., Inc., No. 2- 4096, 2003 WL 22015434, at *6 (S.D.N.Y. Aug. 25, 2003) (finding three months was insufficient to constitute "suspicious timing" for pregnancy discrimination). Instead, Plaintiff was terminated after a thirty-day probationary period wherein she had the opportunity to improve the quality of her work in response to the negative feedback she had been provided for years. That Defendant afforded Plaintiff the opportunity to continue working at Liberty Mutual following her pregnancy announcement belies an inference of temporal proximity.

Additionally, the record does not contain evidence that would show Plaintiff was treated less favorably than non-pregnant co-workers that had a similar history of performance issues. Plaintiff testified that there were other pregnant women in the office at the time, Pl. Dep. Tr. 408:9-10, but does not point to evidence they were treated different than non-pregnant workers. Nor has Plaintiff shown that a "pattern of antagonism" followed her pregnancy announcement. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000). In Hetzel, the court found there was sufficient evidence to support an inference of pregnancy discrimination when there was evidence showing the plaintiff's supervisor told her pregnant women could not get certain assignments, made statements about the plaintiff being "pregnancy crazy," and had a hostile reaction to a doctor's note. 2018 WL 6046623, at *5. The present record is devoid of any similar evidence of antagonism. To the contrary, the record reflects that Plaintiff's supervisor responded positively to her pregnancy. Skibinsky responded to Plaintiff's pregnancy announcement email by offering her congratulations, describing this as "great news," and wishing her a "happy and healthy" pregnancy. Pl. RSOMF ¶ 53. In the absence of evidence showing she was treated less favorably as a result of her pregnancy, Plaintiff cannot establish causation, which is a necessary element of her prima facie case.

Any inference of discrimination in Plaintiff's termination is further undercut by the fact that Plaintiff's supervisor did not make the ultimate employment decision. Plaintiff's supervisor, who admittedly knew of her pregnancy, simply recommended termination to DeBellis, a vice president with decision-making authority. Pl. RSOMF ¶¶ 60, 63. DeBellis made the decision to terminate after reviewing Plaintiff's disciplinary record and performance evaluations (which pre-dated Plaintiff's pregnancy). Id. ¶¶ 70-72. Moreover, the record is also clear that the email sent by Human Resources to DeBellis recommending termination did not mention Plaintiff's pregnancy and DeBellis did not otherwise have knowledge of Plaintiff's pregnancy at the time she decided to terminate Plaintiff. Rygiel-Boyd Cert., Ex. 25, ECF No. 52; Pl. RSOMF ¶ 72.

Therefore, a reasonable jury could not find that there was a factual nexus between Plaintiff's pregnancy and her termination.

### ii. Pretext

Even if Plaintiff could make out a prima facie case of discrimination, she cannot meet her burden of proving that Defendant's proffered reason for her termination—her consistently negative job performance—was a pretext for discrimination. To prove Defendant's proffered reason for Plaintiff's termination was pretextual, Plaintiff must demonstrate "such weaknesses, implausabilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action" that could lead a reasonable jury to infer that Defendant did not truly act for that reason. Carlson v. Twp. of Lower Alloways Creek, 452 F. App'x 95, 100 (3d Cir. 2011) (citing Kautz v. Met–Pro Corp., 412 F.3d 463, 467 (3d Cir.2005)).

There is no competent record evidence from which a reasonable jury could find that Plaintiff was terminated for any reason other than her longstanding performance issues. Prior to Plaintiff's pregnancy announcement, she had received negative feedback from different

supervisors and was receiving weekly coaching to address her performance deficiencies. Pl. RSOMF ¶¶ 19-22, 42-44. Moreover, the record indisputably shows that Plaintiff had received approximately six warnings (including extensions of prior warnings) over less than two years. See id. ¶¶ 54-57. Plaintiff testified that she does not know whether Skibinsky issued her final warning because she was pregnant and points to no evidence to suggest otherwise. See Pl. Dep. Tr. 408:1-11 ("Q: Do you have any reason to believe that she was mad about your pregnancy? A: [ ] And there were a couple of other pregnant people in the office, so, you know – I don't know."). In sum, Plaintiff received no less than five written performance warnings from different managers in less than two years prior to her pregnancy announcement. This disciplinary record is given further credence by Plaintiff's poor marks in her annual performance evaluations. See Rygiel-Boyd Cert., Exs. 3, 11.

Plaintiff argues repeatedly that the criticisms of her job performance were subjectively incorrect and unjustified. But that is not enough. Courts cannot second-guess business decisions nor reexamine the merits of performance evaluations absent evidence that the employer made those decisions with a discriminatory motive. See Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 527 (3d Cir. 1992) ("[A] plaintiff has the burden of casting doubt on an employer's articulated reasons for an employment decision. Without some evidence to cast this doubt, this Court will not interfere in an otherwise valid management decision."). Plaintiff's performance issues are well documented and began years before she announced her pregnancy. Plaintiff's conclusory allegations and subjective suspicions about Defendant's motives cannot reasonably refute the mountain of evidence to the contrary. See, e.g., Hopkins v. Kuehne + Nagel Inc., No. CV 15-7454, 2018 WL 6243039, at *8 (D.N.J. Nov. 28, 2018).

Therefore, the Court finds that a reasonable jury could not find that Defendant's proffered legitimate reason for Plaintiff's termination was mere pretext.

### B. Retaliation

Retaliation claims under the NJLAD are similarly analyzed under the burden-shifting framework of McDonell-Douglas. See Gunnings v. Borough of Woodlynne, No. 5-5459, 2007 WL 4591290, at *11 (D.N.J. Dec. 28, 2007). In order to establish a claim for unlawful retaliation, Plaintiff must first prove a prima facie case by showing (1) she engaged in a protected activity known to the employer; (2) she was subjected to an adverse employment decision; and (3) there is a causal link between the protected activity and the adverse employment action. Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 547 (2013). Plaintiff has not presented any evidence that could establish this prima facie case of retaliation.

As an initial matter, it is not clear Plaintiff even engaged in protected activity related to her pregnancy. As plead, Plaintiff alleges that her "termination was as a result of illegal retaliation for her complaints about disability/perception of disability and/or gender pregnancy discrimination." Compl. ¶ 319. In this context, "protected activity" would involve some attempt by Plaintiff to vindicate her right under NJLAD to be free from disability or gender discrimination tied to her pregnancy. See Ogunbayo v. Hertz Corp., 542 F. App'x 105, 107 (3d Cir. 2013) (explaining "only challenges to discrimination prohibited by the NJLAD" constitute "protected activity" under NJLAD). While Plaintiff had filed complaints of discrimination or unfair treatment to Human Resources, none of them mentioned her pregnancy. Plaintiff notified Liberty Mutual of her pregnancy in May 2016. However, an employee merely notifying an employer of her pregnancy is not protected activity under the statute. See Oliver v. Scranton Materials, Inc., No. 3:14-549, 2015 WL 1003981, at *6 (M.D. Pa. Mar. 5, 2015) (explaining "[m]erely requesting disability leave

13

or maternity leave is not protected activity"). Plaintiff points to no evidence in the record that shows she reported or complained of pregnancy discrimination at Liberty Mutual.

Moreover, even assuming some of Plaintiff's complaints amounted to protected activity, Plaintiff fails to proffer any evidence that would show a causal link between that conduct and her termination. As discussed supra with respect to her discrimination claims, Plaintiff points to no evidence that could show her termination was in some way motived by any nefarious reason related to her pregnancy. Here too, the causal nexus can be shown by temporal proximity or other evidence that, taken as a whole, raises an inference of causation. See Nuness v. Simon & Schuster Inc., 221 F. Supp. 3d 596, 606 (D.N.J. 2016). Again, Plaintiff was terminated two-and-a-half months after she notified Liberty Mutual of her pregnancy, which is insufficient to establish temporal proximity. See Leboon v. Lancaster Jewish Cmty. Ctr. Ass'n., 503 F.3d 217, 233 (3d Cir. 2007). Moreover, Plaintiff has pointed to no other evidence of retaliatory motive. The mere fact that Plaintiff was terminated while she was pregnant does not establish causation. See Grubb v. Garbutt, No. A-2595-07T2, 2010 WL 3516847, at *8 (N.J. Super. Ct. App. Div. Sept. 3, 2010) (explaining that having previously engaged in protected activity is not itself sufficient to establish causation).

And, as with the discrimination counts, Plaintiff has not pointed to any evidence that the reason for her termination was pretextual. Consistently poor performance is a valid, non-retaliatory reason for termination. See Choy v. Comcast Cable Communications, LLC, 629 Fed. Appx. 362, 365 (3d Cir.). Again, Plaintiff has pointed to no evidence that could show this reason was mere pretext for retaliation.

Therefore, the Court finds that a reasonable jury could not find that Defendant unlawfully retaliated against Plaintiff following her pregnancy announcement.

14

## V. Conclusion

For the reasons contained herein, Defendant's Motion for Summary Judgment is **GRANTED**. An appropriate order accompanies this Opinion.

**Dated**: April 29, 2021

>         */s Madeline Cox Arleo*
>         **HON. MADELINE COX ARLEO**
>         **UNITED STATES DISTRICT JUDGE**